491 P.2d 168

**Elizabeth JACOBSON, Plaintiff-Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.**

**No. 9280.**

Supreme Court of New Mexico.

Nov. 29, 1971.

Thomas D. Schall, Jr., Albuquerque, for plaintiff-appellant.

Eugene E. Klecan, Albuquerque, for defendant-appellee.

OPINION

STEPHENSON, Justice.

Appellee ("State Farm") was granted summary judgment and appellant ("plain-

tiff") appeals. We affirm. This case has been here once before. 81 N.M. 600, 471 P.2d 170 (1970).

State Farm issued a policy of insurance to plaintiff which included disability coverage as follows:

"COVERAGE T—Total Disability.

"To pay the applicable amount of weekly indemnity stated as applicable to the insured designated for such coverage in the declarations for each week of continuous total disability of each insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while occupying or through being struck by an automobile, provided:

"(1) such disability shall commence within 20 days from the date of such accident, and

"(2) such disability has a duration of not less than seven consecutive days, and

"(3) any disability during the period of one year from its commencement shall be deemed total disability only if it shall continuously prevent the insured from performing any and every duty pertaining to his occupation, and

"(4) any disability after said one year shall be deemed total disability only if it shall continuously prevent the insured from engaging in any and every gainful occupation for which he is reasonably fitted by education, training or experience. * * *"

Plaintiff was injured in an automobile collision on August 8, 1967. She then suffered distress which sometimes required her to leave her work or even miss work for periods of up to three consecutive days, a situation which continued until October 28, 1967 and from time to time thereafter. No claim is made by plaintiff for disability payments on account of this sort of disability.

Ultimately plaintiff was confined in a hospital on more than one occasion for both conservative treatment and surgery, and was disabled for continuous periods of seven days or more on four occasions between October 28, 1967 and December 2, 1968. She says she was intermittently so disabled for a total of forty-one weeks during that time.

On these facts, both parties moved for summary judgment on the disability compensation count of the complaint. The trial court sustained State Farm's motion.

It is plaintiff's theory that her disability "commenced" within twenty days of the accident because during that time "on her first day at work following the collision of August 8, 1967 she was in such distress, and was so nauseated that she could not continue at her work for the full day and returned to her home; that on a number of occasions on the days immediately following the collision in the month of August, 1967 she reported for work but was unable to continue because of pain and nausea; that on several occasions during the month of August, 1967 she was so nauseated that she could not drive her automobile and her employer made arrangements for taking her from the office to her home; that on the 24th of August, 1967 she was seen by Dr. H. V. Hedman and saw him on three occasions; * * * that through the kindness of her employer no deductions were made for the considerable amount of time she took off in August, 1967; * * *."

Plaintiff concedes that no "continuous total disability" of at least "seven consecutive days" either occurred or commenced within twenty days of the injury. She asserts that it is sufficient that some disability occurred in the first twenty days and that the features of totality and duration could come later.

Plaintiff further contends that to be entitled to disability payments under the provisions of the policy we have quoted, the entire disability period for which claim is made need not be continuous, but rather may be intermittent so long as each period for which claim is made amounts to seven days or more.

We do not agree with her first premise and therefore need not consider the second.

The first paragraph of Coverage T provides compensation in a specified amount "for each week of continuous total disability" which, by paragraph numbered 2, must have "a duration of not less than seven consecutive days." Paragraph numbered 1, which sets forth the twenty-day requirement, in speaking of "such disability," refers to "continuous total disability" in the first paragraph.

■ The intermittent distress suffered by plaintiff during the first twenty days following the collision, as a matter of law, cannot be said to be commencement of "continuous total disability" and we therefore do not reach the question of whether the compensable period must be continuous in its entirety or whether it may be intermittent so long as each period consists of seven days or more. Our interpretation of the policy's provisions is made with full knowledge of the axiom that ambiguities in insurance policies are resolved in favor of the insured. The portion of the policy we have construed is not ambiguous.

The policy also contained a medical payment provision for a maximum of $1,000.00. It is undisputed that plaintiff's medical expenses exceeded that sum. However, the policy contained provisions that State Farm would "be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery" which the plaintiff might have, and plaintiff was required to "do nothing after loss to prejudice such rights."

■ State Farm was prepared to pay $1,000.00 to the plaintiff and advised her attorney that it would do so upon execution by plaintiff and return to it of a "Loan Receipt Under Medical Payments Coverage" by the terms of which the payment was said to be a loan, though repayable only from recovery from the tortfeasor. The plaintiff signed the loan receipt, but only after her attorney had placed thereon, above her signature, a notation that "Foregoing signed under doctrine of Harleysville Mutual v. Lea, 410 P.2d 495." Some time while these matters were proceeding, plaintiff settled with and released the tortfeasor. State Farm took the position that the settlement and release, together with the notation placed on the loan receipt, destroyed its subrogation rights. It therefore declined to pay plaintiff under the medical payments coverage.

Plaintiff, in another count, sued upon the medical payment provisions of the policy. After filing of affidavits disclosing these facts, plus a great many more, the court granted summary judgment on State Farm's motion as to this claim as well.

State Farm asserts that the issues in respect to medical payments are resolved in its favor by Motto v. State Farm Mutual Automobile Insurance Co., 81 N.M. 35, 462 P.2d 620 (1969), the opinion in which was handed down during the pendency of this case and subsequent to the episodes in respect to the loan receipt which we have recounted. Plaintiff tacitly takes the same view of Motto in urging us to overrule that case, a step which we are not persuaded we ought to take.

■ Harleysville Mutual Insurance Company v. Lea, 2 Ariz.App. 538, 410 P.2d 495 (1966), the case previously mentioned in our explanation of occurrences related to the loan agreement, held on similar facts that actions for personal injuries were not assignable at common law, and even though by statute they survive, they are still not assignable in whole or in part prior to judgment. Such is not the law of New Mexico in respect to subrogation claims. Motto v. State Farm Mutual Automobile Insurance Co., supra.

Plaintiff seeks to distinguish the case at bar from Motto on the grounds that in the latter the settlement and release were concealed. This is not a distinguishing feature. The effect of what was done in Motto and here by the insureds had the same effect on the insurer's subrogation rights.

Finding no error, we affirm. It is so ordered.

COMPTON, C. J., and OMAN, J., concur.