Phillip E. PORTER, Appellant,

v.

MFA MUTUAL INSURANCE COMPA-
NY, a Foreign Insurance
Corporation, Appellee.

No. 54408.

Supreme Court of Oklahoma.

Feb. 16, 1982.

Rehearing Denied April 6, 1982.

Barry R. Davis, Of the Firm, Wheeler, Parsons, Wheeler & Davis, Oklahoma City, for appellant.

Melvin F. Pierce, Pierce, Couch, Hendrickson, Johnson & Baysinger, Oklahoma City, for appellee.

BARNES, Vice Chief Justice:

The Appellant, Phillip Porter, was injured in an automobile-motorcycle accident in Oklahoma City during April, 1978. The accident was caused by the negligence of the automobile driver, James Sheltman. At the time of the accident, Porter held four

uninsured motorist policies issued by the Appellee, MFA Mutual Insurance Company (MFA).

Porter made demand upon Sheltman for compensation for his property and medical damages. At that point it was discovered that Sheltman's bodily injury liability policy contained limits of $5,000.00 for each person and $10,000.00 for each accident. Porter then informed MFA of a possible uninsured motorist or underinsured motorist claim,[1] as his demand for settlement exceeded Sheltman's coverage. This notice also informed MFA that Porter would expect payment under his policies with MFA if Sheltman's carrier paid only policy limits.

Sheltman's carrier offered the policy limits in settlement of Porter's claims. Porter accepted that offer and gave Sheltman and his insurance carrier a general release of all claims. Shortly thereafter, Porter demanded that MFA pay the remaining claim under the uninsured motorist policies. The demand was refused and Porter filed suit on September 7, 1978.

Porter and MFA filed a joint stipulation of facts and agreed that the trial court should decide the liability issue on motions for judgment by each party. The trial court sustained MFA's motion for judgment on the grounds that Porter destroyed MFA's right of subrogation and that the "consent to settle" claims of the policies did not involve a question of public policy. Porter makes this appeal from the trial court's judgment.

The central question in this controversy is whether Porter's settlement prejudiced the rights of MFA.

The material provisions are found in Section Five of the policies which initially outlines the "Uninsured Motorists" coverage.[2] Section Five, subpart Three, states that this coverage (Uninsured Motorists) does not apply if the insured makes a settlement with the tort-feasor without the written consent of the insurer.[3] Section Five, subpart Six, indicates that in the event of payment by the insurer, the company becomes entitled to any proceeds of a settlement or judgment against the tort-feasor and that the insured shall hold in trust for the company any rights of recovery that he might have against the tort-feasor.[4]

---

1. See *Mid-Continent Cas. Co. v. Theus*, 592 P.2d 519 (1979).

2. "1. Coverage E—Uninsured Motorists (Damages for Bodily Injury)—
The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by the accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured or such representative and the company or by arbitration as hereinafter provided.
No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization, or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

3. "3. Exclusions—Coverage E does not apply—
* * * (b) to bodily injury to an insured with respect to which such insured, his legal representative, or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor; . . ."

4. "6. Trust Agreement—In the event of a payment to any person under this Coverage E.
(a) The company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any right of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; (b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of the claim made under this coverage E; (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights; (d) if requested in writing by the company, such person shall take, through any representative designated by the company,

We initially address the validity of the "consent to settle" clause. Porter challenges this provision on the grounds that it is contrary to public policy. This clause does interfere with the policy objective of promoting settlements without resort to the judicial arena. We have previously held that consent to sue, no action, and arbitration clauses are void as against public policy and contrary to 15 O.S.1971, § 216.[5]

We have held such clauses void on the rationale that said clauses attempt to place the requirement of the insurer's permission as a condition precedent and thus limits and conditions the character of coverage mandated by the statute, and is therefore void and of no effect.[6] Other jurisdictions have concluded that such a consent-to-settle clause is void or unenforceable on the rationale that the insured should not be restricted or prevented, in any manner, from employing legal counsel or instituting legal proceedings.[7]

■ However, as will be discussed in more detail later, the insurer is also protected by the trust agreement provision in the policy if insured gives a general release pursuant to such settlement which cuts off insurer's rights in any way.[8] If the insured gives such a general release pursuant to settlement, the trust agreement provision would give insurer an adequate defense in any action by the insured against the insurer after settlement and general release by the insured with the uninsured motorist. Since MFA is protected both by the unin-

sured motorist statute and the trust agreement, the consent-to-settle clause is superfluous and does nothing more than to chill settlements and otherwise dilute the mandatory uninsured motorist statute and the protection for injured innocent victims against loss. We therefore hold that the consent-to-settle clause is void and of no force and effect as being against public policy and that said policy exclusion is not a valid policy defense under the facts of this case.

The question then becomes: Does MFA have a valid policy defense under the trust agreement and the uninsured motorist statute, in that Porter violated such trust agreement by settling and giving a general release to Sheltman, thereby destroying MFA's right of subrogation under the uninsured motorist statute? There is case authority that the type of subrogation claimed by MFA in this case is prohibited, in that such subrogation is the insurer's indirect attempt to become the assignee of a tort cause of action, something the insurer cannot do directly, and thus is a violation of the real party in interest limitation of 12 O.S.1971, § 221.[9]

In *State Farm Fire & Casualty Insurance Co. v. Farmers Insurance Exchange*, 489 P.2d 480 (1971), we ruled that an insurance carrier could not sue the tort-feasor for recovery of payments made to its insured. The case of *Hardware Dealers Mutual Fire Insurance Co. v. Krueger*, 486 P.2d 737 (1971), also supports this proposition. How-

---

such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorney's fees incurred by it in connection therewith; (e) such persons shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision."

5. Title 15 O.S.1971, § 216, provides:
 "Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void."

6. *Boughton v. Farmers Insurance Exchange*, 354 P.2d 1085 (1960); *Keel v. MFA Insurance Co.*, 553 P.2d 153 (1976).

7. *Gulf American Fire & Casualty Co. v. McNeal*, 115 Ga.App. 286, 154 S.E.2d 411 (1967); *Guthrie v. State Farm Mutual Auto Ins. Co.*, 279 F.Supp. 837 (applying law of Virginia) (1968).

8. See Footnote 4.

9. Section 221 provides that every action must be prosecuted in the name of the real party in interest, except as otherwise provided, but it shall not be deemed to authorize the assignment of a thing in action, not arising out of contract.

ever, in *Aetna Casualty & Surety Co. v. Associated Transports*, 512 P.2d 137 (1973), we overruled the holding in the above cases and held that Section 221 does not prevent the transfer of a cause of action by subrogation.

 MFA contends that the statute requiring uninsured motorist coverage, 36 O.S. § 3636(E), specifically allows for subrogation rights.[10] We agree with MFA's contention that said statute specifically recognizes the rights of MFA as the uninsured motorist insurer to recoupment of its loss from the third party tortfeasor.[11] The "terms and conditions of such coverage" afforded by the policies which are the subject of this action clearly include a "trust agreement provision" for a relationship of trust for the use and benefit of the insurer.[12]

Having decided that the insurer, under the uninsured motorist statute and the trust agreement, has rights of subrogation, were said subrogation rights destroyed by Porter when he settled with and gave a general release to Sheltman, and, if so, was such action on the part of Porter a valid policy defense to MFA in the case at bar?

 It seems to be a well-recognized rule that if an insured settles with and releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurer, the insurer's right of subrogation against the wrongdoer is thereby destroyed.[13] Also as a general rule an insured who deprives insurer, by settlement and release, of its right of subrogation against the wrongdoer thereby provides insurer with a complete defense to an action on the policy.[14] Porter, by voluntarily and knowingly making settlement with and giving a general release to Sheltman, barred MFA from exercising its lawful right of recourse against the responsible party, and Porter was thereby precluded from bringing action on the uninsured motorist policies. What Porter should have done was make settlement with Sheltman's insurance carrier by means of a partial release, conditioned on the reservation of whatever rights and interests the uninsured motorist insurance company, MFA, might have or claim thereafter against the tort-feasor.

The judgment of the trial court sustaining MFA's motion for judgment on the grounds that Porter destroyed MFA's right of subrogation and indemnity is therefore affirmed.

AFFIRMED.

10. Title 36 O.S.Supp.1976, § 3636(E), provides that:

"In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. Provided, however, with respect to payments made by reason of the coverage described in subsection (C) above, the insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor."

This statute was subsequently amended on May 16, 1979, but the above quoted provision remains the same.

11. Title 36 O.S. (1971) § 6092 specifically limits the right of subrogation with respect to medical payments; however, said section has no application as to the rights of the parties involved in uninsured motorist coverage as said section is a general statute concerning medical payment coverage on insurance, whereas Section 3636 is a special and specific statute. *Beidleman v. Belford*, 525 P.2d 649 (1974); see also *Parks v. Stith*, 204 Okl. 625, 232 P.2d 614 (1951).

12. See Footnote 4.

13. *Great American Insurance Co. v. Watts*, 393 P.2d 236 (1964), 92 A.L.R.2d 102, 44 Am.Jur.2d 767, Insurance, Section 1839.

14. *Blocker v. National Discount Ins. Co.*, 493 P.2d 825 (1972); *State Farm Fire & Cas. Ins. Co. v. Farmers Insurance Exchange*, 489 P.2d 480 (1971); *Geertz v. State Farm Fire & Casualty*, 253 Or. 307, 451 P.2d 860 (1969); *Jacobson v. State Farm Mutual Automobile Ins. Co.*, 83 N.M. 280, 491 P.2d 168 (1971); *McNeill v. District-Realty Title Ins. Corp.* (Dist.Col.App.), 342 A.2d 55; *Hart v. State Farm Mutual Automobile Ins. Co.* (S.D.), 248 N.W.2d 881.

IRWIN, C. J., and HODGES and HARGRAVE, JJ., concur.

SIMMS, J., concurs in result.

LAVENDER and OPALA, JJ., concur specially.

OPALA, Justice, concurring specially:

Because, in my view, the provisions of 36 O.S.Supp.1976 § 3636(E) control over any conflicting terms in 36 O.S.1971 § 6092, the insurer who extends uninsured or underinsured motorist coverage is subrogated, upon payment, to the rights of the insured against the tortfeasor. In my opinion, § 3636(E) is to be treated as a "special statute" which must prevail over § 6092. The latter generally deals with medical payments and applies in those situations in which uninsured or underinsured coverage is not implicated. Moreover, § 3636(E) constitutes the most recent expression of the legislative will on the subject of subrogation rights of the insurer-obligor under uninsured or underinsured coverage.

It is for this reason that I concur in the court's opinion.

I am authorized to state that LAVENDER, J. joins in my views.