757 P.2d 792

**Angelo JIMENEZ, Plaintiff–Appellee,**

v.

**FOUNDATION RESERVE INSURANCE CO., INC., Defendant–Appellant.**

**No. 17341.**

Supreme Court of New Mexico.

July 12, 1988.

Felker & Ish, P.A., Carol J. Ritchie, Santa Fe, for defendant-appellant.

Daniel J. O'Friel, Winston Roberts–Hohl, Santa Fe, for plaintiff-appellee.

## OPINION

WALTERS, Justice.

Plaintiff Angelo Jimenez, through a declaratory judgment action, sought determination of his entitlement to stack the uninsured/underinsured motorist coverage applying to two cars for which he had purchased insurance under a single policy. Jimenez had paid a separate premium for each car covered. The policy issued by defendant Foundation Reserve Insurance Company contained a limit-of-liability clause that prohibited stacking of uninsured/underinsured benefits. Both parties filed motions for summary judgment on the issues of stacking and on the amount Jimenez should recover if stacking were allowed. The trial court granted summary judgment in favor of Jimenez on both issues and Foundation appeals. We affirm in part and reverse in part.

Jimenez was injured in a two-car accident. At trial the parties stipulated that Jimenez's damages amounted to $50,000. The negligent driver had liability coverage with Farmers Insurance Company in the amount of $25,000. When Farmers paid the $25,000 to Jimenez, he repaid to Foundation $3,439 that he had previously received from Foundation under a medical payment provision that contained a subrogation and reimbursement clause.

Jimenez's attempt to recover underinsured motorist coverage from Foundation was unsuccessful. Jimenez contends that he paid two premiums for coverage on two cars; therefore he should be entitled to stack the coverages. Each vehicle was insured under the uninsured motorist provision for $25,000 per person per accident and $50,000 per accident. By stacking, the negligent driver would thus be underinsured in the amount of $25,000, which, according to Jimenez, he should then be able to collect from Foundation. Foundation denied the request for additional benefits under Jimenez's policy, however, because it relied on the endorsement stating the following limit of liability:

The limit of liability shown in the Declarations for "each person" for Uninsured Motorist Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person," the limit of liability shown in the Declarations for "each accident" for Uninsured Motorist Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the auto accident.

Under this limitation, Foundation says that Jimenez would be entitled to a total of $25,000 in recovery for any one accident if the one who injured him were uninsured or underinsured. Because Jimenez received $25,000 from Farmers, Foundation asserts that the tortfeasor was not underinsured, and Farmers, therefore, was not obligated to make any underinsurance payments.

Jimenez additionally argued that he was entitled to have the $3,439 paid by Foundation under its medical payment provision returned to him, in addition to receiving $25,000 from Farmers and the $25,000 he claimed from Foundation. The trial court adopted Jimenez's view and entered a judgment allowing him to recover the total of $53,439.

After entry of the trial court's judgment, Jimenez filed a bill of costs claiming $3,870 in costs incurred for the suit. The bill

included fees for two expert witnesses who attended a hearing that was vacated without any testimony having been taken, because a prior docketed trial went overtime and forced the parties to reschedule their trial for a later date. Foundation objected to those two items of costs because the witnesses had not testified.

The three issues in this case are thus: (1) When an insured pays multiple premiums for coverage on more than one car, is a clear and unambiguous liability limitation clause in the policy enforceable to prohibit stacking of those coverages? (2) Was Foundation entitled to collect reimbursement for its payment of medical benefits to Jimenez, pursuant to a subrogation and reimbursement clause, from the $25,000 paid over to Jimenez from Farmers? and (3) May the prevailing party recover fees for expert witnesses who did not testify because the hearing was rescheduled through no fault of either party? We address each issue in turn.

(1) *Limitation of liability clause prohibiting stacking.*

The statute mandating that insurance companies provide underinsured and uninsured motorist coverage in all automobile liability policies sold in the state defines an "underinsured motorist" as an operator of a motor vehicle whose limit of liability coverage "under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage." NMSA 1978, § 66–5–301(B) (Repl. Pamp.1984). Foundation argues that the negligent driver was not underinsured because her liability insurance amounted to $25,000, and Jimenez's uninsured motorist coverage is limited to $25,000 per person under the clear and unambiguous limit-of-liability clause contained in the policy.

■ Exclusionary provisions in an insurance policy will be enforced if they (1) are clear and unambiguous in meaning, and, (2) if they do not conflict with public policy stated in express statutory language or by indication of legislative intent. *March v. Mountain States Mut. Cas. Co.*, 101 N.M.

689, 691, 687 P.2d 1040, 1042 (1984). The limit of liability provision clearly passes the first test; we consider whether it passes the second.

■ We have previously discussed the public policy of the underinsured/uninsured motorist statute. The legislature intended that an injured person be compensated to the extent of insurance liability coverage purchased for his or her benefit. *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985). The precedent is clear; exclusionary clauses in automobile policies that purport to deny stacking for the purpose of determining the tortfeasor's underinsured status have been held void as against this State's policy of compensating innocent victims injured through no fault of their own. *Id.* Even though Foundation's liability limitation clause is unambiguous, that is not determinative. In *Schmick*, the exclusionary clause was both ambiguous and violative of public policy. Insurance policy clauses that prohibit stacking are particularly repugnant to public policy when the injured insured has paid separate premiums for underinsured/uninsured motorist coverage on each vehicle. We held in *Lopez v. Foundation Reserve Insurance Co., Inc.*, 98 N.M. 166, 646 P.2d 1230 (1982), despite the failure of the policy to address the effect on coverage when multiple premiums were paid for several cars under one policy, that if an insurance company charges separate premiums for each vehicle covered under uninsured/underinsured motorist protection, even if the second premium is a reduced premium, fairness requires that the insured be allowed to stack the coverages for which he or she has paid. *Id.* at 170, 646 P.2d at 1234. Likewise, in *Konnick v. Farmers Insurance Co. of Arizona*, 103 N.M. 112, 703 P.2d 889 (1985), an insured was entitled to stack the underinsured motorist policies for which separate premiums had been paid. Stacking is an appropriate means to compensate for losses suffered by an insured through no fault of his or her own. *Id.* at 114, 703 P.2d at 891. By so holding, effect is given to the reasonable expectations of

the insured who purchased the multiple coverages. *Id.* at 116, 703 P.2d at 893.

Foundation argues that Jimenez had no reasonable expectation that he could obtain additional underinsured motorist coverage because the limit-of-liability clause was clear in meaning. Nevertheless, the law in New Mexico also has been clear that when an injured insured is the beneficiary of a policy and either the insured or another has paid premiums for the benefit of the injured insured, then all policy coverages under which he or she is a beneficiary may be stacked. *Morro v. Farmers & Foundation*, 106 N.M. 669, 671–672, 748 P.2d 512, 514–515 (1988), citing to *Sloan v. Dairyland Ins. Co.*, 86 N.M. 65, 519 P.2d 301 (1974) (an insurance company may not attempt to avoid coverage for which it has received premiums). We also noted in *Continental Insurance Co. v. Fahey*, 106 N.M. 603, 605, 747 P.2d 249, 251 (1987), that, in general, the only legitimate limitations on the recovery of a party insured under uninsured/underinsured motorist coverage are that: (1) the insured be legally entitled to recover damages, and (2) the negligent driver be uninsured. Because case law in this jurisdiction repeatedly has stated the public policy which allows uninsured/underinsured motorist coverage to be stacked when separate premiums are paid for additional coverage, an insured may reasonably expect to stack coverage. Once again we hold, therefore, that an insurer's attempt by a limiting clause to preclude stacking of additional coverage separately paid for by the insured violates the clear policy of the uninsured motorist statute, which intends that an injured party be compensated to the extent of coverage obtained by or for the injured party. Jimenez is thus entitled to recover from Foundation "the difference between his uninsured motorist coverage and the tortfeasor's liability coverage or the difference between his damages and the tortfeasor's liability coverage, whichever is less." *Schmick*, 103 N.M. at 222, 704 P.2d at 1098.

Our holding not only has been presaged by our earlier decisions, it echoes decisions of other courts which similarly have held that when public policy embraces the stacking concept, policy language limiting recovery to one vehicle's coverage (although premiums have been paid on more than one vehicle) shall be struck as null and void no matter how clear and unambiguous the limiting language. *See, e.g., Great Central Ins. Co. v. Edge*, 292 Ala. 613, 616, 298 So.2d 607, 610 (1974) (decision in Alabama is not based on whether or not the limiting provision of a policy is in plain, unmistakable language; insurer cannot avoid liability where additional premiums are collected); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Humphrey*, 54 Ala.App. 343, 308 So.2d 255 (1975) (uninsured motorist statute construed to assure an injured party recovers from whatever source available, up to the total amount of damages; therefore, provisions limiting such recovery cannot be asserted); *Harhen v. State Farm Mut. Auto. Ins. Co.*, 61 Ill.App.3d 388, 18 Ill.Dec. 542, 377 N.E.2d 1178 (1978) (insured paid premiums for uninsured motorist protection for each of four vehicles with the expectation of receiving greater coverage in case of an accident with an uninsured motorist; an exclusionary provision that requires cross-checking for an explanation of terms in another portion of the policy, which may be difficult to a lay person, is unenforceable as contrary to public policy); *Cameron Mut. Ins. Co. v. Madden*, 533 S.W.2d 538 (Mo.1976) (stacking permitted when two premiums are paid for uninsured motorist coverage on two vehicles under one policy, clarity of limiting language that prohibits stacking notwithstanding; public policy expressed in the uninsured motorist coverage statute prohibits insurer from collecting multiple premiums, then limiting recovery to only one of the uninsured motorist coverages); *Grange Mut. Cas. Co. v. Volkmann*, 54 Ohio St.2d 58, 374 N.E.2d 1258 (1978) (stacking permitted under three separate policies, each with uninsured motorist coverage, when three separate premiums paid; exclusionary provision limiting recovery to only the coverage on the vehicle involved in the accident, no matter how clear and definite, violates public policy and therefore is unenforceable).

We agree with the court's statement in *Allstate Insurance Co. v. Maglish*, 94 Nev. 699, 586 P.2d 313, 315 (1978), relating to two vehicles covered and two premiums paid under one policy, that "it violates public policy to allow the insurer to collect a premium for certain protection and then take it away by a limiting clause." We are not swayed by any argument that the second premium, whether or not it is a reduced premium, is collected to indemnify the insurer against an increased risk of loss incurred by insuring additional vehicles. It is the insurer's responsibility to weigh the probability of risk and exposure and to set its premiums accordingly. Our long-standing recognition of a public policy that allows stacking of coverages paid for by separate premiums is a reality that by now should be no secret to insurance companies.

The trial court correctly determined that Jimenez could stack his policies to establish whether the negligent driver was underinsured. Because Jimenez had $50,000 in underinsured/uninsured motorists coverage and the negligent driver had only $25,000, the driver was underinsured to the extent of $25,000. Mr. Jimenez was entitled to recover $25,000 from Foundation.

(2) *Reimbursement for payment of medical benefits.*

■ Under its "Medical Payments Coverage," Foundation agreed to pay a maximum of $5,000 in reasonable medical expenses for accidental injuries sustained by a "covered person" (which definition included Jimenez) while occupying the insured vehicle. Part F of the policy included a provision reserving Foundation's subrogation right to the insured's right to recover against another, and a further provision that the insured should hold in trust and reimburse Foundation the amount of any payments Foundation had made if the insured recovered damages from another. The parties acted in accordance with those provisions: Foundation paid $3,439 for Jimenez's medical expenses; Jimenez reimbursed Foundation from the $25,000 received from Farmers. Jimenez sought and was awarded a return from Foundation of the reimbursement he had made to his insurer. Foundation thus was required to contribute $28,439 to Jimenez's recovery of damages.

We have long recognized an insurer's subrogation rights, and that they are entitled to protection. *See, e.g., March v. Mountain States Mut. Cas. Co.*, 101 N.M. 689, 687 P.2d 1040 (1984); *Safeco Ins. Co. v. United States Fidelity & Guar. Co.*, 101 N.M. 148, 679 P.2d 816 (1984); *Jacobson v. State Farm Mut. Auto. Ins. Co.*, 83 N.M. 280, 491 P.2d 168 (1971); *Motto v. State Farm Mut. Auto. Ins. Co.*, 81 N.M. 35, 462 P.2d 620 (1969); *Campbell v. Benson*, 97 N.M. 147, 637 P.2d 578 (Ct.App.1981). We have rejected the claim that public policy weighs against enforcement of those rights in uninsured (or underinsured) motorist situations. *March*, 101 N.M. at 692, 687 P.2d at 1043.

In the context of medical provisions agreeing to payment for an insured's injuries cause by another, and the rights of subrogation or reimbursement if the insured may recover from another, it is clear that medical payments coverage is a conditional coverage. If the insured has no entitlement to recovery against another, medical payments to the extent of coverage are an absolute obligation of the insurer. If the injured party may or does recover from another, the insurer's obligation to pay then entitles it to press its insured's claim by subrogation, or be reimbursed if its insured directly recovers from another. Clearly, the premium paid for medical coverage provides the insured with the convenience and peace of mind accompanying prompt payment for necessary medical expenses incurred. The requirement for reimbursement of those prompt payments under the terms of the reimbursement provision is not unjust when plaintiff has fully recovered the total of his stipulated damages. In keeping with our consistent disapproval of double recoveries, we adhere to our statement in *Hood v. Fulkerson*, 102 N.M. 677, 680, 699 P.2d 608, 611 (1985), that double recoveries are not permitted. *See also* comments in *General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 703

P.2d 169 (1985); *Scott v. Woods*, 105 N.M. 177, 730 P.2d 480 (Ct.App.1986); *Kirby v. New Mexico State Highway Dept.*, 97 N.M. 692, 643 P.2d 256 (Ct.App.1982).

The trial court erred in awarding the additional $3,439.29 to plaintiff against Foundation.

**(3) *Award of expert witness fees.***

■ Jimenez's cost bill included fees for two expert witnesses who attended the scheduled trial on the merits, but who did not testify at that time because the hearing was vacated, through no fault of the parties, and rescheduled for a later date. Foundation objected, but the court awarded the costs. We reverse.

The right of a prevailing party to recover costs incurred in litigation is by virtue of statutory authority, or by rule of the court as authorized by statute. *New Mexico Bureau of Revenue v. Western Elec. Co.*, 89 N.M. 468, 469, 553 P.2d 1275, 1276 (1976). *See also* NMSA 1978, § 39–3–30. The statute applicable to costs for experts provides that the district judge may order payment of a reasonable fee "for any witness who qualifies as an expert and who testifies in the cause in person or by deposition." Thus, there are two hurdles the prevailing party must overcome before costs beyond per diem will be allowed for a witness. First, the witness must qualify as an expert and, second, the expert must testify either at trial or by deposition. We note that Foundation does not contest the witnesses' status as experts. Nevertheless, the witnesses did not testify at any time. Consequently, the statute does not authorize fees, as costs, for their attendance at the courthouse. Plaintiff's cost bill is reduced by the amount of the costs awarded for expert witness fees.

The judgment of $25,000 against Foundation is affirmed. The portions requiring Foundation to reimburse Jimenez in the amount of $3,439.29 in medical payments, and costs of expert witness fees, are reversed. The case is remanded for the purpose of entering a new judgment accordingly.

IT IS SO ORDERED.

SCARBOROUGH, C.J., SOSA, Senior Justice, and RANSOM, J., concur.

STOWERS, J., dissents.

STOWERS, Justice dissenting.

Although I agree with the portion of the majority opinion that reverses the judgment with respect to the amount of medical payments and costs of expert witness fees, I respectfully dissent on the issue of stacking the insurance coverage in this case. The exclusionary provision limiting liability in the uninsured/underinsured motorist coverage herein is enforceable as a term or condition within the policy, and neither contravenes public policy nor any relevant statutes.

The insurance policy issued by defendant-appellant, Foundation Reserve Insurance Company (Foundation Reserve), sets forth conditions for recovery of underinsured motorist benefits. Underinsured motorist coverage is a subcategory of uninsured motorist coverage. Underinsured coverage is afforded when a "covered person" is legally entitled to recover from the owner or operator of an underinsured motor vehicle. An "underinsured motor vehicle" is defined as one that is insured at the time of the accident with limits equal or greater to the minimum limits required by New Mexico law, NMSA 1978, § 66–5–208 (Repl.Pamp.1984), but less than the limit of liability available under the insurance policy. The provisions in the Foundation Reserve policy are consistent with NMSA 1978, Section 66–5–301(B) (Repl.Pamp. 1984), which states that an insured is entitled to underinsured motorist benefits to the extent that the insured's underinsured motorist coverage exceeds the tortfeasor's liability. *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 222–23, 704 P.2d 1092, 1098–99 (1985). The uninsured/underinsured motorist coverage also contains a limit of liability provision which states:

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident.

This is the most we will pay regardless of the number of
(1) Covered persons;
(2) Claims made;
(3) Vehicles or premiums shown in the Declaration; or
(4) Vehicles involved in the accident.

This provision notifies the insured that uninsured/underinsured motorist coverage is restricted to the limits contained in the declaration sheets accompanying the policy.

In New Mexico, the principles of contract law are applied to the terms of an insurance policy to determine the obligations of the insurer vis-a-vis the insured. *March v. Mountain States Mut. Cas. Co.*, 101 N.M. 689, 691, 687 P.2d 1040, 1042 (1984). Exclusionary provisions are enforceable as long as their meaning is clear and they do not conflict with public policy as set forth by the expressed statutory language or by legislative intent. *Id.* I agree with the majority opinion that the limit of liability provision is clear and unambiguous in meaning but disagree with the majority's conclusion that the provision conflicts with public policy.

Where the language is clear and unambiguous, coverage must be determined according to the plain meaning of the words employed. Taking the plain meaning of the words used in reading and interpreting the New Mexico uninsured/underinsured statutes, NMSA 1978, § 66–5–301(B) (Repl. Pamp.1984), it is apparent that the purpose of uninsured motorists insurance coverage is to provide to innocent automobile accident victims a means of insulating themselves from damages incurred as a result of unfortunate and far too frequently occurring collisions with uninsured motorists. *See Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 646 P.2d 1230 (1982). As of this date there is no stated statutory public policy in New Mexico requiring or prohibiting stacking which would vitiate clear insurance policy terms. If the legislature intends to permit stacking of all uninsured/underinsured motorists insurance coverage, it should supply the requirement by express statute, showing its clear intent and recognizing the underwriting principle

and costs which result. *See* Annotation, *Combining or "Stacking" of "No–Fault" or Personal Injury Protection (PIP) Coverages in Automobile Liability Policy or Policies*, 29 A.L.R. 4th 1 (1984).

Stacking in this state has been permitted only by judicial decree. *See Schmick v. State Farm Mut. Auto Ins. Co.* and *Lopez v. Foundation Reserve Ins. Co.* However, we have not until today rewritten a contract to permit stacking under the guise of public policy, as the majority opinion does, where no such policy exists in New Mexico either for or against stacking and there is a clear contractual prohibition against it within the insurance policy as in this case. The majority would have us rewrite the insurance policy for the parties even though the majority agrees that the terms and conditions, including the limitation of liability provision, are clearly stated therein. It is not a proper function of the courts to relieve either party to a contract from its binding effect by rewriting the contract where it has been entered into without fraud or imposition and is not due to a mistake against which equity will afford relief. *See In re Tocci*, 45 N.M. 133, 142, 112 P.2d 515, 521 (1941). Thus, in light of the increased risk incurred by a carrier while insuring separate automobiles under uninsured/underinsured motorist coverage, the clear contractual limitation against stacking in the insurance policy, and the absence of any public policy with respect to stacking by the legislature, I find the majority's reasoning permitting stacking on the basis of public policy is without merit.

Since, as I have already stated, no statute in New Mexico requires nor prohibits the aggregation of multiple uninsured motorist coverage, the problem becomes one of determining what the contract of insurance in question provides. The rules applicable to such an analysis are that a policy of insurance is to be construed as any other contract, so as to give effect to the intent of the parties at the time it was made. *March v. Mountain States Mut. Cas. Co.* That intent is to be determined objectively, that is, by what a reasonable person would have understood the words to mean. It is

the function of the courts to construe a contract of insurance as it is written, and not create a liability not assumed by the insurer, nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability. *See Farmers Alliance Mut. Ins. Co. v. Bakke,* 619 F.2d 885 (10th Cir.1980) (applying New Mexico law). Once the parties entered into a contractual relationship, they were bound by the terms and conditions therein including the limit of liability provision.

The majority agrees that the policy herein states in intelligible and unambiguous language that regardless of the number of automobiles insured, the declared limit of the insurer's liability to each person would be the limit of its liability for all damages sustained by any one person in any one accident with an uninsured motorist. Since the insurance agreement is not ambiguous and does not conflict with pertinent statutes or public policy, the exclusionary provision limiting the liability of the carrier is enforceable under contract law.

For these reasons, I dissent.