Marty KAVANAUGH, and Tom Love, Executor of the Estate of Dan P. Kavanaugh, Deceased, Plaintiffs/Appellants,

v.

MARYLAND INSURANCE CO., INC., Defendant/Appellee,

v.

Vanessa KANE, Third Party Defendant.

No. 87910.

Court of Civil Appeals of Oklahoma, Division No. 1.

June 17, 1997.

Robert M. Behlen, Oklahoma City, for Appellant.

Tom Mullen, Connie Bryant, Oklahoma City, for Appellee.

JOPLIN, Judge.

¶ 1 Appellants (collectively, Insured) seek review of the trial court's order granting summary judgment to Insured in Insured's action to recover under the uninsured/underinsured motorist (UM/UIM) provisions of her insurance contract with Maryland Insurance Co., Inc. (Insurer). Having reviewed the record, we find the trial court erred in granting summary judgment to Insured for less than the limits of her UM/UIM coverage, an amount equal to her stipulated damages of $25,000. We consequently hold the order granting summary judgment to Insured should be reversed, and the cause remanded with instructions to grant judgment to Insured for $25,000.00.

¶ 2 From the very abbreviated record before this Court, we discern that on July 14, 1987, Insured sustained injury when a vehicle driven by defendant Vanessa Kane (Tortfeasor) rear-ended Insured's vehicle.[1] On July 5, 1989, Insured brought an action against Tortfeasor for damages as a result of Insured's injuries but dismissed the action against Tortfeasor without prejudice on April 1, 1992.

¶ 3 On May 14, 1992, Insured brought an action against Insurer for recovery of UM benefits under Insured's insurance contract with Insurer. On April 1, 1993, Insurer joined Tortfeasor as a third-party defendant in Insurer's indemnity claim.

¶ 4 Both Insured and Insurer filed motions for summary judgment. For purposes of summary judgment only, Insured and Insurer entered into five stipulated facts:

- [T]he total damages sustained by [Insured] in this case equal $25,000.00.

- [Insured] was fault free and [Tortfeasor] was 100 percent negligent.

- At the time of the wreck which is the subject of this lawsuit, [Tortfeasor] ha[d] a policy of liability insurance with Allstate Insurance Company; the liability limits stated in the policy [were] $20,000.00.

- The statute of limitations has run as to any claim which [Insured] might assert against Third Party Defendant [Tortfeasor].

1. Kane denied liability below. However, for purposes of this appeal, and in view of the stipulations entered below, we refer to Kane as Tortfeasor.

- [A] policy of insurance was in force and effect between [Insured] and [Insurer] at all times material hereto; this policy provided uninsured motorist coverage in the amount of $25,000.00.

¶ 5 In support of its position, Insurer argued that it was "directly and primarily responsible to the insured [only] for that amount of the claim which exceed[ed] the liability limits of the tortfeasor's insurance." *Buzzard v. Farmers Ins. Co., Inc.,* 1991 OK 127, 824 P.2d 1105, 1112. Thus, said Insurer, since under the stipulated facts, Insured had suffered $25,000.00 in damages due to the negligence of Tortfeasor, and because Tortfeasor had $20,000.00 in liability insurance coverage, Insurer's liability was limited to the $5,000.00 difference between Insured's $25,000.00 UM/UIM limit and the $20,000.00 liability limit of Tortfeasor.

¶ 6 Insured argued, on the other hand, that *Buzzard* applied only where the tortfeasor's insurance was *available* to the insured, because in those situations, the insured could recover from the tortfeasor's liability carrier and any excess of damages over the tortfeasor's liability limit from the insured's own UM/UIM carrier. However, said Insured, in the present case, there was no *available* liability insurance of the tortfeasor because Insured's statute of limitations against Tortfeasor had run. Therefore, *Buzzard* did not apply. In this vein, Insured further argued that the fact that the statute of limitations had run against Tortfeasor did not affect Insurer's liability to Insured for the entire loss under the UM/UIM provisions of the policy, i.e., "that failure of the insured to commence an action against the uninsured tortfeasor within the two-year time [statute of limitations] [did] not *ipso facto* discharge the insurer from liability upon its uninsured motorist coverage." *Uptegraft v. Home Ins. Co.,* 1983 OK 41, 662 P.2d 681, 687.

¶ 7 On the stipulated facts, the trial court granted summary judgment to Insured for

$5,000.00, and directed entry of final judgment for that amount.[2] Insured appeals, and the matter stands submitted on the trial court record.[3]

¶ 8 In the evolving law of UM/UIM insurance coverage, this case presents the dilemma of application of the *Buzzard* holding to an *Uptegraft* situation. Any answer to this riddle must in any case be consistent with the underlying purpose of the UM/UIM law of this state.

¶ 9 In this regard, we first observe that Oklahoma law "imposes a responsibility upon the UM insurer to protect its insured by good faith and fair dealing...." *Pentz v. Davis,* 1996 OK 89, 927 P.2d 538, 539. And, "the purpose of [the Oklahoma UM/UIM statute] is to assure each person the *full* contracted coverage for personal injury damages caused by a financially irresponsible, tortious motorist for each premium paid." *Bohannan v. Allstate Ins. Co.,* 1991 OK 64, 820 P.2d 787, 792. (Emphasis added.)

¶ 10 As we analyze the parties' respective positions with the underlying purpose of UM/UIM coverage in mind, we next observe that Insurer argued that *Buzzard* established the outside limit of its liability under the UM provisions of the policy, i.e., the UM Insurer's sole obligation to pay damages only in excess of the tortfeasor's liability limits without regard to whether the tortfeasor's insurance is available or whether the statute of limitations has run against the tortfeasor. However, this analysis of *Buzzard* clearly contravenes the recognized purpose of the Oklahoma UM/UIM statutory scheme to "assure each [UM insured] person the *full* contracted coverage" for which a premium has been paid. *Bohannan,* 820 P.2d at 792. To hold otherwise and allow a UM/UIM insurer to deduct from the insured's recovery an amount equal to the tortfeasor's liability limits, when the tortfeasor's liability limits are not available, would result in the insured

---

**2.** The trial court "expressly determine[d] that there is no just reason for delay and expressly direct[ed] that final judgment in the amount of $5,000.00, in favor of [Insured] and against [Insurer] be filed in the case." 12 O.S.Supp.1995 § 994(A). Insurer's third-party action against Tortfeasor remains unresolved.

**3.** Rule 13(h), Rules for District Courts, 12 O.S.Supp.1993, Ch. 2, App., and Rule 1.203, Rules of Appellate Procedure in Civil Cases, 12 O.S.Supp.1993, Ch. 15, App. 2.

receiving less than what he/she had paid for. As applied in the present case, Insurer would pay only the $5,000.00 difference between the tortfeasor's liability limit and Insured's UM limit, yet Insurer would perhaps recover the $5,000.00 paid from the Tortfeasor, the effect then being that Insurer pays nothing, and the Insured receives only $5,000.00 even though the Insured purchased a UM policy of $25,000.00 and paid premiums for that UM benefit, a result clearly contrary to the underlying purpose of UM coverage.

■ ¶ 11 In this respect, we tend to agree with Insured's analysis of *Uptegraft*, as we read *Uptegraft* as establishing an uninsured/underinsured motorist insurance carrier's potential liability up to the limit of UM liability (assuming the insured's claim meets or exceeds that limit) even if the statute of limitations has run against the uninsured/underinsured tortfeasor. However, the Supreme Court in *Uptegraft* specifically left unsettled what result "if the record showed that the insured refused to heed the insurer's demand—made within the two-year tort limitations period—to protect its subrogation rights by filing a lawsuit against the uninsured tortfeasor." *Uptegraft*, 662 P.2d at 687, fn. 12. If, for instance, the record in the present case showed that the Insurer demanded that Insured recommence her action against Tortfeasor under 12 O.S. § 100 and Insured refused to do so, we see good reason, consistent with the underlying purpose of UM, to limit the insured's recovery against the UM/UIM carrier to the amount insured's damages exceeds the tortfeasor's liability limits, unavailable only because of an affirmative act of the insured. *Porter v. MFA Mutual Insurance Co.*, 1982 OK 23, 643 P.2d 302, 305.

■ ¶ 12 In the present case, however, Insurer presented no evidence that Insured refused to heed Insurer's demand to protect Insurer's subrogation rights, or engaged in any affirmative acts or prejudicial conduct: again, the mere failure of the insured to commence or recommence an action against the uninsured/underinsured Tortfeasor within the limitations period will not discharge the Insurer from liability under the UM provisions of its policy. *Uptegraft*, 662 P.2d at 687. On the stipulated facts, Insured showed entitlement to recovery of the full amount of her damages from Insurer under *Uptegraft* as we have construed it. The burden of production then devolved upon Insurer to show some facts entitling it to avoid liability for the full extent of Insured's damages up to the limit of liability of the UM provisions of its contract for which Insured paid. This it did not do. Under these circumstances, we consequently hold that Insured was entitled to recovery of the full extent of UM coverage of $25,000.00, the amount of her stipulated damages sustained. We therefore further hold the trial court erred in holding otherwise, and direct on remand entry of judgment for Insured accordingly.

¶ 13 The order of the trial court granting summary judgment to Insured for $5,000.00 is therefore REVERSED, and the cause REMANDED with instructions to grant judgment to Insured for $25,000.00.

HANSEN, P.J., concurs;

BUETTNER, J., dissenting,

¶ 1 A tortfeasor does not become uninsured simply because the injured party chooses not to seek recovery for damages within the statute of limitations. That is the effect of the majority opinion. The tortfeasor had $20,000 of insurance available. The tortfeasor was underinsured in the amount of $5,000 (considering stipulated damages of $25,000). The trial court judgment gave Insured exactly what was bargained for: insurance coverage for damages exceeding the amount of the tortfeasor's insurance. *Buzzard v. Farmers Ins. Co.*, 1991 OK 127, 824 P.2d 1105.