(692 P.2d 393)
No. 56,098

FARMERS INSURANCE COMPANY, INC. and SHELTER INSURANCE COM-
PANIES, *Appellees*, v. PRUDENTIAL PROPERTY AND CASUALTY INSUR-
ANCE COMPANY, *Appellant*.

Opinion filed December 20, 1984.

*M. Duane Coyle* and *F. C. McMaster*, of McMaster & McMaster, of Wichita, for appellant.

*John A. Bausch*, of Ascough, Bausch, Eschmann, P.A., of Topeka, for appellees.

Before PARKS, P.J., BRISCOE, J., and JEROME HARMAN, Chief Judge Retired, assigned.

PARKS, J.: Plaintiffs, Farmers Insurance Company, Inc. (Farmers) and Shelter Insurance Companies (Shelter), filed this declaratory judgment action against defendant, Prudential Property and Casualty Insurance Company (Prudential), seeking contribution to an insurance settlement paid by plaintiffs. The district court granted summary judgment to plaintiffs and defendant appeals.

On November 22, 1980, Brenda J. Picking was a passenger in a motor vehicle operated by Michelle L. Miller. The Miller vehicle collided head-on with another motor vehicle being operated by Mathew A. Insley, who was an uninsured motorist. All four individuals involved in the collision were killed.

At the time of the collision, each plaintiff had an insurance policy covering Miller's vehicle and providing uninsured motorist coverage to the named insured and "any other person while occupying an insured motor vehicle." The limit of each policy was $15,000. Defendant had issued insurance policies to Flora Picking (Brenda's mother) covering three vehicles. These policies also provided uninsured motorist protection to the named insured and any relative living in the household. Thus, Brenda Picking was protected at the time of her death with

uninsured motorist coverage through all five insurance policies issued by plaintiffs and defendant.

After investigation indicated that Mathew Insley was uninsured, Everett and Flora Picking, heirs-at-law of Brenda J. Picking, brought a wrongful death action in the District Court of Dickinson County, Kansas, against the special administrators of the estates of Mathew A. Insley and Michelle L. Miller. Plaintiffs intervened in that action as the insurers of Miller to bring about settlement of the claim. A $27,500 settlement was reached and because the two vehicles collided in the middle of the road, the parties concluded that under comparative negligence, Insley and Miller were equally at fault. Thus, one-half of the settlement figure was assessed against the liability of each driver. The intervening insurers then paid the entire amount of the settlement dividing responsibility for $13,750 as payment of a claim against their liability coverage of Miller and sharing the cost of the other $13,750 as uninsured motorist coverage for Insley's negligence.

Prior to resolution of the lawsuit, defendant was asked to participate with plaintiffs in the uninsured motorist settlement with the Pickings. Defendant responded by letter dated April 21, 1981, and denied any obligation to make a voluntary payment in regard to the uninsured motorist claim. On March 29, 1982, plaintiffs filed their petition to recover three-fifths of the $13,750 settlement or $8,250 from the defendant.

Subsequently, plaintiffs filed a motion for summary judgment contending that defendant was required to contribute to the uninsured motorist settlement based upon the ratio of the number of policies defendant maintained covering its insured, Picking, (three) to the total number of policies maintained by the insurance companies (five). In its brief in opposition to the motion for summary judgment, defendant argued that summary judgment was inappropriate since a determination of the comparative fault of the two drivers had not yet been determined by a jury and, further, that an "excess-escape" clause contained in its policies made defendant's policies "excess"' and not subject to pro, rata contribution. The district court agreed with plaintiffs and granted the summary judgment.

Defendant argues on appeal that the trial court erred in concluding that defendant was proportionally liable for the damages attributable to the uninsured motorist. The basis for its denial of

any liability for contribution is the following "other insurance" provision found in its "easy to read" policy:

"In the case of cars you don't own, we'll only pay if the amount due you is more than the amount payable under any other similar insurance that covers the accident. And then we'll only pay that amount by which the maximum amount for this part shown on the Declarations Page exceeds the maximum amount provided by the other insurance. We'll only pay if you have this coverage on your own car."

This type of insurance provision is typically referred to as an "excess-escape" clause because it seeks to limit liability to the excess damages not covered by other insurance or to escape it altogether if there is no excess due above the limits of other policies. The policies of both Farmers and Shelter have similar provisions; but, since the named insureds of the plaintiffs' policies (Miller's parents) owned the car in which the insured (Picking) was killed, there is no question but that their excess-escape clauses were inapplicable and plaintiffs were liable for the uninsured motorist coverage. By contrast, the excess-escape clause in Prudential's policy would, on its face, eliminate any liability for defendant since the amount due the insured's heirs, $13,750, was less than the amount payable under either of plaintiffs' policies, $15,000. However, the district court held that defendant's excess-escape clause was void under the authority of *Clayton v. Alliance Mutual Casualty Co.*, 212 Kan. 640, 512 P.2d 507 (1973), and ruled that Prudential was liable for contribution of a pro rata share of the settlement. Defendant appeals the decision holding its policy provision void.

Insurance contracts will be enforced according to their terms so long as they do not conflict with pertinent statutes or public policy. *Gibson v. Metropolitan Life Ins. Co.*, 213 Kan. 764, 770, 518 P.2d 422 (1974). In *Clayton*, the Supreme Court held that policy provisions which attempt to condition, limit or dilute the unqualified uninsured motorist coverage mandated by statute are void and of no effect. *Clayton*, 212 Kan. 640, Syl. ¶1. The "other insurance" provision considered purported to limit uninsured motorist coverage to the amount the policy limit exceeded the limit of other coverage. When applied against the insured, this provision operated to prohibit stacking coverage and therefore diluted the protection mandated by law. For example, if, as in *Clayton*, a person injured in an accident with an uninsured driver was covered by three policies with limits of $20,000 each,

the excess-escape clause would limit his collectible damages to $20,000 since no one policy exceeds the limits of the other two. Since the Court had previously held that "stacking" coverage was lawful, the *Clayton* court held that the anti-stacking effect of the other insurance provision would dilute the $60,000 worth of intended coverage. Thus, *Clayton* held that under the facts of that case, the excess-escape clause was void.

Plaintiffs contend that *Clayton* held void the precise type of provision Prudential seeks to rely on and that the provision must be void for all purposes. Defendant, making an argument which was raised but not decided in *Midwest Mutual Ins. Co. v. Farmers Ins. Co.*, 3 Kan. App. 2d 630, 633, 599 P.2d 1021 (1979), *rev. denied* 227 Kan. 927 (1980), argues that *Clayton* held "other insurance" clauses void only insofar as they prohibit "stacking" to fully compensate the insured within the aggregate limits of the applicable policies. Defendant also contends that stacking is not an issue in this case and that *Clayton* is inapplicable.

Judicial decisions must always be interpreted in light of the facts considered in the case. The provisions involved in both *Clayton* and this case have two distinct aspects. First, the excess-escape clause provides that coverage under the policy only attaches if the amount of damages due exceeds the coverage provided by others. If this first provision is met so that liability must be assumed, the second part of the other insurance provision seeks to limit the amount of the coverage provided. It was this second limitation which was considered and held void in *Clayton*. However, the Court did not consider the effectiveness of the first part of the clause which excludes all liability in the event that a threshold amount, determined by the limits of other coverage, is not exceeded.

Since the Pickings' uninsured motorist damages of $13,750 were within the $15,000 limit of plaintiffs' policies, the threshold amount was not reached in this case. Thus, Prudential seeks only to enforce the escape provision of its policy which was not considered in *Clayton*; the excess provision limiting the amount of liability does not come into play. We, therefore, must consider whether there is any public policy reason which would prohibit enforcement of the provision of Prudential's contract which would permit it to escape liability for contribution.

A similar question was considered in a different context in

*Western Cas. & Surety Co. v. Universal Underwriters Ins. Co.,* 232 Kan. 606, 657 P.2d 576 (1983). In *Western*, the Court considered the effectiveness of two other insurance provisions in automobile liability insurance policies. The coverage is mandated by the Kansas Automobile Injury Reparations Act (K.A.I.R.A.), K.S.A. 40-1301 *et seq.*, in much the same manner that uninsured motorist coverage is required by law. In addition, it has been held that provisions which would dilute or exclude K.A.I.R.A. coverage are void just as provisions limiting uninsured motorist coverage are also without effect. *DeWitt v. Young,* 229 Kan. 474, 478, 625 P.2d 478 (1981). Thus, the appellant in *Western* sought to defeat reliance on an other insurance clause in a liability policy on the basis of the same type of public policy argument which was successful in *Clayton*. However, the particular policy involved did not limit coverage, it simply established that other coverage had prior responsibility. Therefore, in response to Western's argument that the provision was void as an attempt to dilute coverage, the Court held as follows:

"The logic of Western's argument is difficult to follow. 'Other insurance' excess coverage clauses do not seek to dilute, condition or limit statutorily mandated coverage. Rather they seek only to establish priority as to which policy should be exhausted first in satisfying the liability. We conclude such clauses are not violative of K.A.I.R.A. . . .

"Western argues even if 'other insurance' clauses are held not to be violative of K.A.I.R.A., they are contrary to public policy. This point is wholly without merit. We see no public policy question in how insurance companies divide among themselves the loss occasioned by their communal insured." *Western,* 232 Kan. at 609.

Despite the different insurance context, the conclusion of *Western* that a provision which does not dilute coverage but seeks to establish a priority of payments between insurers is not violative of public policy is equally applicable to this case. Both uninsured motorist coverage and that dictated by the K.A.I.R.A. may not be limited or diluted, but there is no reason that, once assured full coverage will be afforded the insured, the insurers cannot be permitted to attempt to make their coverage secondary to the coverage of others. Of course, if several insurers have an equal claim to secondary status, the provisions relied upon may be disregarded as mutually repugnant and the insurers forced to share pro rata. *Western,* 232 Kan. at 611. However, if the circumstances permit only one insurer to rely on an other insurance

clause to assert a secondary liability position, enforcement of the resulting priority in a contribution action does not violate public policy.

Since *Clayton* did not hold the escape clause establishing priorities between overlapping coverages void and since this priority provision does not dilute the coverage paid for by the insured, there appears no reason that the provision should not be enforced. As *Western* stated, there is no public policy prohibiting the imposition of a priority between insurers. Thus, the mere coupling of an inoffensive clause with one which must be void as an attempt to limit coverage need not render the entire provision void.

We, therefore, conclude that the district court erred in holding defendant liable to plaintiffs. Its contract provides that it is not obligated to provide any coverage when the limits of other insurance need not be exceeded to cover the entire loss. This provision does not violate public policy as a dilution of uninsured motorist coverage and must be enforced. Since the Pickings' loss fell under the limits of plaintiffs' coverage, defendant is not liable.

In light of this conclusion, we reverse the judgment of the district court on both the issue of liability and attorney fees. See *Watson v. Jones*, 227 Kan. 862, 871, 610 P.2d 619 (1980).

Plaintiffs' motion for attorney fees in reference to this appeal is also denied.

Reversed.