Michael MUSTAIN and Peri Lisa Mustain, Appellants,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY; Commercial Union Insurance Company; and American Employers Insurance Company, Appellees.

No. 80936.

Supreme Court of Oklahoma.

Sept. 17, 1996.

Rehearing Denied Oct. 23, 1996.

Bob Behlen, Lampkin, McCaffrey & Taw-water, Oklahoma City, for appellants.

Tracy L. Pierce, Tom L. King, King, Roberts & Beeler, Oklahoma City, for appellees.

ALMA WILSON, Chief Justice:

Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991, §§ 1601, et seq., the United States Court of Appeals for the Tenth Circuit certified the following question of state law to this Court:

> Are the decisions in *Hibbs v. Farmers Insurance Co.*, 725 P.2d 1232 (Okla.1985) and *Smith v. Government Employees Insurance Co.*, 558 P.2d 1160 (Okla.1976) that when an insurance policy contains an excess insurance clause, primary coverage must be exhausted before the secondary insurer is liable, still good law in light of *Buzzard v. Farmers Insurance Co.*, 824 P.2d 1105 (Okla.1991)?

The certified question has been recast by this Court. *Centric Corp. v. Morrison–Knudsen Co.*, 731 P.2d 411 (Okla.1986). The questions to be answered are:

> 1) Based on this Court's rulings in *Buzzard v. Farmers Insurance Co.*, 824 P.2d 1105 (Okla.1991) and *State Farm Mutual Auto. Insurance Co. v. Wendt*, 708 P.2d 581 (Okla.1985) and pursuant to 36 O.S. 1991, § 3636, should uninsured motorist insurance be treated as primary coverage?
> 2) If uninsured motorist insurance must be declared primary coverage in Oklahoma, should the ruling be prospective?

The recast questions of law arise because the appellants (Mustain) settled their uninsured motorist insurance (UM) claims with the insurer of the vehicle involved in the accident for less than policy limits and seek to recover from the UM insurer of their personal motor vehicle. Our answer to the first question is that as between the insurer and its insured UM insurance is primary coverage. We answer the second question in the negative because the 1979 amendments to § 3636(C) of Title 36 [1] clearly provide that the UM insurer's responsibility to its injured insured may not be conditioned on the amount of other coverage.

The Tenth Circuit certified the following facts. On December 18, 1988, Michael Mus-

1. 1979 Okla.Sess.Laws, ch. 178, § 1.

tain was repairing an electric sign on the premises of the Comfort Inn in Oklahoma City, Oklahoma. Mustain was working near the top of an automatically extendable ladder that was attached to the crane of a truck. Signco, Inc. owned the crane truck. David Gaddis, the purported owner of Signco, Inc., manipulated the ladder control causing the ladder to swing and Mustain to fall. The crane truck was covered by an United States Fidelity and Guaranty (USF & G) policy which included UM coverage and Mustain was classified as an insured under the UM provisions. Mustain was also an insured under the UM provisions of his personal automobile insurance policy issued by American Employer's Insurance Company (American).

■ Mustain filed suit in the United States District Court for the Western District of Oklahoma against USF & G and American to recover UM benefits. After an unsuccessful motion for summary judgment, USF & G settled with Mustain for less than its UM policy limit. American moved for summary judgment, asserting that the maximum UM benefits under the policy covering the truck had to be exhausted before Mustain was entitled to collect benefits under his UM policy. The federal district court granted summary judgment in favor of American and Mustain appealed.

American urges that the USF & G insurance is the primary UM coverage which must be exhausted before its UM liability is triggered. This argument is grounded in the "other insurance" policy provisions which read:

> If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applica-

ble limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

■ This "other insurance" clause does not establish a priority of payments, i.e. primary and secondary responsibility, among multiple UM insurers. It provides that the UM coverage will be excess over all other insurance when Mustain is injured in another person's vehicle. Excess provisions in a motor vehicle liability insurance policy are unenforceable if the provisions would allow the insurer to escape liability.[2] In this case, American's reading of the "other insurance" clause would allow it to completely escape liability and thereby defeat the purpose of the controlling statute[3] to protect insured persons who are injured by uninsured/underinsured motorists.[4] *Buzzard v. Farmers Insurance Co.*, 824 P.2d 1105 (Okla.1991), foreshadowed that such escape attempts will be futile and thus altered the consequences of *Hibbs v. Farmers Insurance Co.*, 725 P.2d 1232 (Okla.1985).

■ Pursuant to 36 O.S.1991, § 3636, UM insurance is first-party coverage[5] that follows the person.[6] The UM insurer and its insured occupy a statutory relationship imbued with a duty of good faith and fair dealing.[7] The injured UM insured is entitled to swift payment from the UM insurer and, in the absence of a reasonable dispute as to the coverage or the amount of damages, the UM insurer may not withhold payment to its insured on the sole basis that the liability insurance has not been exhausted.[8] Accordingly, we conclude that 36 O.S.1991, § 3636 imposes a responsibility upon the UM insurer to protect its insured by good faith and

---

**2.** *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery*, 747 P.2d 947 (Okla.1987).

**3.** 36 O.S.1991, § 3636. The UM insurance policies herein were issued pursuant to 36 O.S.1981, § 3636. The applicable provisions of § 3636 remain unchanged in the referenced 1991 codification, unless otherwise noted.

**4.** *Cothren v. Emcasco Insurance Company*, 555 P.2d 1037 (Okla.1976); *Moser v. Liberty Mut. Ins. Co.*, 731 P.2d 406 (Okla.1986).

**5.** *Bohannan v. Allstate Insurance Co.*, 820 P.2d 787 (Okla.1991).

**6.** *Shepard v. Farmers Insurance Company*, 678 P.2d 250 (Okla.1984); *State Farm Mut. Auto. Ins. Co. v. Wendt*, 708 P.2d 581 (Okla.1985).

**7.** *Townsend v. State Farm Mutual Automobile Insurance Company*, 860 P.2d 236, 238 (Okla. 1993).

**8.** *Buzzard v. Farmers Insurance Company, Inc.*, 824 P.2d 1105, 1112 (Okla.1992).

fair dealing from and after the time of injury and the insurer may not withhold payment to its injured insured on the sole basis that some other insurance has not been exhausted. We therefore hold that as between the insurer and its insured UM insurance is primary coverage.

Section 3636 is silent as to the priority of payments among multiple UM insurers. The statute does provide that the UM insurer making payment to its insured is entitled to the proceeds of any settlement or judgment against the person or organization legally responsible for the damages.[9] It does not, however, set forth the priority of multiple UM insurers to such proceeds when the insured has recovered under two or more UM policies. Rather, it creates subrogation rights to guard against one insurer shifting the burden of loss to another or escaping the burden of loss through token settlements. "Subrogation is a doctrine the law has devised for the benefit of one secondarily liable who has paid the debt of another."[10]

■ Under § 3636, the injured insured has a right to an indemnity unburdened by contract provisions that control priority among multiple UM insurers. The insurers, on the other hand, do not lose their rights to press for adjustment or apportionment of the indemnity among themselves as required by the law of insurance. Payment entitles the insurer to a judicial determination of the primary, secondary, and tertiary priority among insurers pursuant to the applicable UM insurance policies. Accordingly, we conclude that upon payment to its injured insured the UM insurer may seek a determination of its priority as a secondary insurer pursuant to its policy provisions and a distribution of the burden of loss among all the affected insurers in ancillary, post-judgment proceedings.

■ Our research reveals no general rule for determining primary, secondary, and tertiary priorities among multiple UM insurers and distributing the burden of loss. The provisions in each of the involved UM policies, as well as all the circumstances between and among the injured insured and the UM insurers, must be considered. No one factor can rigidly control the distribution so as to impair satisfaction of the injured UM insured's damages up to the total insurance coverage available and defeat the objective of § 3636.

The priority among multiple UM insurers for payment to the injured insured and apportionment of the burden of loss among the UM insurers must await final adjudication of the damages suffered by the injured insured, a principle unaddressed in *Hibbs v. Farmers Insurance Company*, 725 P.2d 1232 (Okla. 1986). *Hibbs* involved an automobile accident that occurred when Hibbs was forced off the road by another driver, who left the scene of the accident, and collided with a guard rail. The pick-up truck Hibbs was driving was owned by his employer. Hibbs settled with his employer's UM insurer for $17,250.00, although the policy limits were $30,000.00. Hibbs then sued his own UM insurer for the remainder of his damages. Hibbs' UM insurer claimed it was secondarily liable in excess of the employer's UM coverage. The Court framed the issue as "(w)hether settlement with the primary UM carrier for less than the policy limits effectively negates recovery from the secondary UM carrier because of the 'excess' coverage clause."[11] Relying on *Smith v. Government Employees Insurance Co.*, 558 P.2d 1160 (Okla.1976), *Hibbs* held that "(t)he effect of *Smith* as applied to this case means the insurer with secondary coverage does not become liable unless the primary coverage is exhausted."[12] *Smith* concerned the right to indemnity for property damage, which is conceptually different from the right to indemnity under § 3636.[13] Therefore, any part of

---

9. 36 O.S.1991, § 3636, subsection (E).

10. *Sexton v. Continental Casualty Company*, 816 P.2d 1135, 1138 (Okla.1991).

11. *Hibbs*, 725 P.2d at 1233.

12. *Id.*

13. Two of our recent opinions recognize that the law of UM insurance and the law of liability insurance are separate and distinct bodies of law. *Townsend v. State Farm Mutual Auto. Insurance Co.*, 860 P.2d 236 (Okla.1993) and *Gianfillippo v. Northland Casualty Company*, 861 P.2d 308 (Okla.1993).

*Hibbs v. Farmers Insurance Co.,* 725 P.2d 1232 (Okla.1985), which is inconsistent with the UM insurer's responsibility and liability under § 3636 as construed herein, shall have no further precedential value.

**CERTIFIED QUESTION ANSWERED.**

KAUGER, V.C.J., and HODGES, OPALA and WATT, JJ., concur.

LAVENDER, SIMMS, HARGRAVE and SUMMERS, JJ., dissent.

SUMMERS, Justice, dissenting, and joined by LAVENDER, Justice and in part by SIMMS, Justice.

The question certified to us is as follows: Are the decisions in *Hibbs v. Farmers Insurance Co.,* 725 P.2d 1232 (Okla.1985) and *Smith v. Government Employees Insurance Co.,* 558 P.2d 1160 (Okla.1976) that when an insurance policy contains an excess insurance clause, primary coverage must be exhausted before the secondary insurer is liable, still good law in light of *Buzzard v. Farmers Insurance Co.,* 824 P.2d 1105 (Okla.1991)?

The majority has "recast" the question asked by the Tenth Circuit to include questions not briefed by either party and not asked by the Tenth Circuit. The majority opinion reaches beyond the certified question in order to overrule long-standing case law, and in so doing invalidates any UM coverage which is contractually designated to be "excess."

There is nothing wrong with the question asked by the Tenth Circuit. Indeed, the question goes to the very heart of the lawsuit. In *Buzzard* we refused to require the exhaustion of *liability* insurance limits before recovery of underinsurance benefits. Whether we would take a similar approach to exhaustion of primary *UM* coverage, contrary to the earlier *Hibbs,* was of understandable concern to the inquiring court. I respectfully dissent.

Primary insurance coverage is that coverage for which "under the terms of the policy, the insurer is liable without regard to any other insurance coverage available." *Equity Mut. Ins. Co. v. Spring Valley Wholesale*

*Nursery,* 747 P.2d 947, 954 (Okla.1987). Excess or secondary coverage is that coverage which comes into play after primary coverage has been exhausted. *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105 (Okla.1991). An excess insurer is liable only for that amount of damage which is in excess of the coverage provided by the primary policy. Couch on Insurance, Section 62.48 at 484. This Court has long recognized the distinction and has permitted the two types of insurance to co-exist. *Keel v. M.F.A. Ins. Co.,* 553 P.2d 153, 156 (Okla.1976); *Niemeyer v. U.S. F. & G. Co.,* 789 P.2d 1318 (Okla.1990) (acknowledged the dichotomy in the uninsured motorist setting); *Moser v. Liberty Mut. Ins. Co.,* 731 P.2d 406 (Okla.1986); *Aetna Cas. & Sur. Co. v. State Bd. for Prop. & Cas. Rates,* 637 P.2d 1251 (Okla.1981).

The terms "primary" and "excess" are not synonymous with "first party coverage" and "third party coverage." First and third party coverage refer to the recipient of the money paid by the insurer. First party coverage, such as uninsured motorist coverage, requires payment by the insurance company to the insured person rather than to a person injured by the insured person. *Uptegraft v. Home Ins. Co.,* 662 P.2d 681, 684 (Okla.1983). Third party coverage is purchased by the insured person, but is paid to an injured third party. Keeton & Widiss, Insurance law Section 4.10 at 411. The terms "first party coverage" and "third party coverage" refer to the person to receive payment from the insurance company, while "primary" and "excess" refer to the priority of payment. *Keel v. M.F.A. Ins. Co.,* 553 P.2d 153 (Okla.1976).

The majority opinion refuses to recognize these well-established definitions, instead appearing to equate primary coverage with first party coverage. The opinion states that the "other insurance" clause in the present case does not set the priority of payment. The majority goes on to conclude that all UM coverage must be primary. The first statement is incorrect and the latter a *non sequitur.*

The clause in question is clearly an excess insurance provision, which, contrary to the majority's assertion, sets the priority of payment. The main purpose of such clauses is

to set the priority of payment. Widiss, *Uninsured and Underinsured Motorist Insurance*, Vol. 1., Section 13.7; *Farmers Ins. Co. v. Prudential Prop. & Cas. Ins. Co.*, 10 Kan.App.2d 93, 692 P.2d 393 (1984). The majority, while refusing to recognize that an insurer may contractually set the priority of payment and base its premiums on such priority, holds that such a purpose is contrary to the provisions of 36 O.S.1991 Section 3636. I disagree. We have stated that the purpose of Section 3636 is to "assure each person the full contracted coverage for personal injury damages caused by a financially irresponsible, tortious motorist for each premium paid." *Bohannan v. Allstate Ins. Co.*, 820 P.2d 787, 792 (Okla.1991). UM coverage is mandated unless expressly rejected by the insured. Section 3636 does not specify the priority of payment in cases such as this, and it is thus left to the parties to determine such priority.

Clauses such as the one in question do not dilute the strength of § 3636. The provisions have no effect unless there is other collectible insurance. If there is other collectible insurance there is no risk that the injured insured will be completely uncompensated; the other insurance company is primarily responsible for payment. If there is other collectible insurance the injured insured is protected, as are the goals of Section 3636. "Statutory policy is implicated only when insurers deny liability, not when they are in dispute as to which will provide primary coverage." *Equity Mutual*, at 955.

The real issue here, as certified by the Tenth Circuit, is whether *Buzzard v. Farmers Ins. Co., supra,* affected the viability of excess insurance provisions in the arena of UM coverage. The answer should be yes. But its effects should not near as drastic as those chosen by the majority. In *Buzzard* we refused to require the exhaustion of liability insurance limits before recovery of underinsurance benefits. *Buzzard* did not involve an "other insurance" clause. There the insured brought a bad faith claim against the insurer for refusal to pay policy limits on underinsured motorist coverage. One of the insurer's defenses was the failure to exhaust policy limits of the liability policy. We held

that liability policy limits did not need to be exhausted before an underinsurer was required to investigate a claim. If the claimant's damages exceeded the amount of primary liability insurance, we held that the UM insurer would be responsible for the amount above the policy limits of the liability insurer. If the insured had settled with the liability carrier for less than the liability policy limits, the underinsurer was not relieved of liability completely, but its responsibility did not include the "gap" between the settlement amount and the liability policy limits.

*Buzzard* 's effect, if applied to this case, is to permit recovery of secondary or excess benefits without first exhausting the limits of primary benefits. To the extent of their policy limits the plaintiffs here should recover, from the excess UM carrier, the amount of their established damages in excess of the policy limits carried by the primary UM insurer. This rule avoids the possibility of the primary insurer making a token settlement and thereby shifting the main burden to the excess insurer. It also furthers this Court's policy of permitting an insured to recover for all losses for which he or she has paid a premium. Furthermore, it is in line with the majority of sister jurisdictions which permit "excess" clauses to set the priority of payment without allowing an insurer to escape liability based on an "exhaustion of limits" requirement. In fact I have found no state which has completely invalidated "excess" insurance clauses. See *Rucker v. Nat'l General Ins. Co.*, 442 N.W.2d 113 (Iowa 1989) (followed a Buzzard-like approach and upheld the "excess" provision while invalidating the "exhaustion of limits" requirement); *Amer. States Ins. Co. v. Tollari*, 362 N.W.2d 519 (Iowa.1985); *Schultz v. Farmers Ins. Group*, 167 Ariz. 148, 805 P.2d 381 (1991) (provision enforced to the extent necessary to avoid double recovery); *Rossi v. State Farm Auto. Ins. Co.*, 318 Pa.Super. 386, 465 A.2d 8 (1983).

Most states, like Oklahoma, seem concerned with the insurer's attempt to escape liability altogether by relying on the "exhaustion of limits" argument. The majority is concerned that if the "excess" clause is validated, Mustain's UM carrier will escape lia-

bility even though Mustain has presumably paid for UM benefits. That company's position with regard to its escape from liability is not consistent with the law in Oklahoma. *Equity Mutual* made clear that "other insurance" clauses cannot be used to cancel the liability of each insurer by leaving no primary coverage or by disclaiming liability if there is other available insurance. *Id.* at 954. *Buzzard* foreshadowed that such "escape" attempts will be futile. Oklahoma, through these rulings, has protected the insured in compliance with Section 3636. To that extent, *Buzzard* should be considered to have altered the consequences of *Hibbs*.

There is no reason to make the drastic leap made by the majority to invalidate "excess" clauses. These clauses serve valid functions. They establish which insurer has the duty to investigate and defend. The primary insurer has the first duty to defend. Appleman, Insurance Law and Practice, Section 4682. The excess insurer does not expect to be called on for these costs, and charges the insured accordingly. *Id.* Second, the clause guards against the duplication of benefits. *Rossi*, 465 A.2d at 9. Third, these clauses help keep the costs of premiums down.

For these reasons I agree with the majority's conclusion that a UM insurer cannot be permitted to escape liability altogether through the use of an "other insurance" clause. However, I dissent from its reasoning that all UM coverage must be primary. Our prior case law has permitted the use of "excess" provisions to set the priority of payment. This use is consistent with Section 3636 and protects the uninsured motorist to the fullest extent without allowing a double recovery or forcing insurer to charge a larger premium for coverage. I would hold valid the "excess" insurance provision, but would follow *Buzzard* in doing away with the "exhaustion of limits" requirement. In so holding, the interests of all parties would be protected.

SIMMS, Justice, dissenting:

I join Summers, J., insofar as he would uphold the validity of the "excess" insurance clause, however, I do not deviate from the view that resort to "primary" insurance must first be exhausted before recovery may be had against the "excess" carrier.