1998 OK 129

**Linda J. BURCH, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellee.**

No. 88,546.

Supreme Court of Oklahoma.

Dec. 22, 1998.

Dissenting Opinion Corrected Jan. 5, 1999.

Rehearing Denied May 19, 1999.

**1058**

Tye H. Smith, Oklahoma City, Oklahoma, and Sidney A. Martin II, Tulsa, Oklahoma, Carr & Carr, for appellant.

George D. Davis, McKinney, Stringer & Webster, P.C., Oklahoma City, Oklahoma, for appellee.

Rex K. Travis, Oklahoma City, and Renee Williams, Tulsa, for Oklahoma Trial Lawyers Association, *amicus curiae*.

OPALA, J.

¶1 The United States Court of Appeals for the Tenth Circuit ("certifying court") certified the following question pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 §§ 1601 et seq.[1]:

> "When an insured's damages in an automobile accident exceed a tortfeasor's liability limits and the insured seeks payment for damages directly from its underinsured motorist (UIM) carrier, is the UIM carrier liable for the entire amount of the insured's claim when the liability and UIM coverage are provided by the same carrier but the statute of limitations period has expired on the liability claim?

¶2 We answer in the affirmative. Under the provisions of 36 O.S.1991 § 3636,[2] uninsured motorist ("UM") coverage is primary,[3] meaning that an uninsured motorist carrier is liable for the entire amount of its insured's loss from the first dollar up to the UM policy limits without regard to the presence of any other insurance. At first blush this answer may appear to go beyond the parameters of the question asked, but in fact we answer no more than that which is sought. The question posed can be adequately addressed only

---

1. This Act was amended by Laws 1997, c. 61, § 1, eff. Nov. 1, 1997, and is now known as the Revised Uniform Certification of Questions of Law Act.

2. This section was amended by Laws 1994, c. 294, § 5, eff. September 1, 1994 to add certain provisions to subsection G.

3. Primary coverage is defined as that for which, "under the terms of the policy, the insurer is liable without regard to any other insurance coverage available." *Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*, 1987 OK 121, ¶ 19, 747 P.2d 947, 954. In the law of general liability insurance, primary insurance is defined as that which pays a policyholder's first-dollar damages and is the first policy in line to pay such damages. EUGENE R. ANDERSON ET AL., 2 INSURANCE COVERAGE LITIGATION, § 13.3, pp. 104–105 (1997). Excess coverage attaches only after the primary coverage has paid out or been exhausted. *Id.*, § 13.4, p. 106.

by exploring the more fundamental issues raised with respect to the obligation imposed upon UM carriers in general under Oklahoma's statutory scheme for uninsured motorist coverage. In order to answer the certified question, we must first determine whether, in enacting § 3636, the Oklahoma legislature intended UM coverage to be primary. Only by doing so can we then decide how to answer the precise question posed by the certifying court, which presents a somewhat unique factual pattern.

¶ 3 Having determined that UM coverage is primary, we answer the precise question posed by holding that under the unique facts of this case (in which both the liability and the uninsured motorist coverage are provided by the same carrier and the statute of limitations has run on the insured's tort claim against the negligent party), the UM carrier's statutorily mandated obligation as a provider of primary insurance coverage is not altered. *Except where the insured affirmatively destroys the insurer's subrogation rights, a UM carrier is directly and primarily liable to its insured for the entire loss to be indemnified; it must seek recovery of paid indemnity through an exercise of its right to subrogation.*

I

**THE ANATOMY OF FEDERAL LITIGATION**[4]

¶ 4 On April 14, 1992, Linda Burch was riding as a passenger in her own automobile, which was being driven by her husband, Herbert. Herbert rear-ended another vehicle, and Linda was injured. At the time of the accident, Linda's car was covered with respect to both liability and uninsured motorist claims under a single policy of automobile

insurance issued by Allstate Insurance Company. The policy's liability limits were $100,000/$300,000, but those limits "stepped down" to $10,000/$20,000 when the injured party was a named insured under the policy, as Linda was in this case. The UM limits were also $100,000/$300,0000 with no step-down provision.[5] Linda's injuries exceeded the stepped-down $10,000 liability policy limit. Linda notified Allstate of her claim. Allstate contends that for more than two years, she did not provide sufficient documentation for Allstate to evaluate and settle her claim under either the liability or UM coverage.

¶ 5 Without ever filing suit against Herbert, and within one day of the expiration of the statute limiting the time to bring her tort claim against him, Linda brought suit against Allstate in the United States District Court for the Western District of Oklahoma, alleging bad faith and indemnifiable loss under the UM policy.[6] Although Linda and Allstate eventually agreed that her loss from bodily injuries amounted to $50,000, Allstate refused to pay more than $40,000, the value of Linda's claim less Herbert's $10,000 liability coverage limit. Linda pressed for the entire $50,000. Unable to agree on the extent of Allstate's obligation, the parties submitted to the federal district court the following agreed question of law:

In an auto accident case when the tort-feasor has collectible liability insurance coverage with stated limits, and the statute of limitations on plaintiff's claim against the tort-feasor has expired, is the UM carrier obligated to pay those amounts of plaintiff's damages that would have been covered by the tort-feasor's liability coverage limits?

4. The material accompanying the certified question consists of the parties' briefs to the United States Court of Appeals for the Tenth Circuit. Additional briefs, from which the factual recitals in the anatomy of federal litigation were extracted, were received in this case. An *amicus curiae* brief was submitted by the Oklahoma Trial Lawyers Association. *The automobile insurance policy providing the liability and UM coverage for the party involved here was neither included in the record submitted by the Tenth Circuit Court of Appeals nor was it provided by the parties.*

5. The terms of 36 O.S.1991 § 3636 prescribe that the policy limits for UM coverage are "not to

exceed the limits provided in the policy of bodily injury liability of the insured." We have not been asked to decide here, under the rationale employed in *Gray v. Midland Risk Ins. Co.*, 1996 OK 111, 925 P.2d 560, whether the UM coverage in this case should be deemed to have "stepped down" by operation of law when the stepped-down liability limits of the policy were triggered.

6. Federal jurisdiction of this case is based upon diversity of citizenship. *See* the provisions of 28 U.S.C.A. §§ 1332.

¶ 6 Relying upon this court's decision in *Buzzard v. Farmers Insurance Co. ("Buzzard"),*[7] the district court answered the question in the negative. Judgment was for Allstate, and Linda appealed. Not convinced that *Buzzard* was dispositive, the United States Court of Appeals for the Tenth Circuit submitted to this court the certified question of law which we answer today.

## II

## AN UNINSURED MOTORIST CARRIER IS OBLIGATED FOR ALL OF ITS INSURED'S LOSS FROM THE FIRST DOLLAR UP TO THE POLICY LIMITS.

¶ 7 Allstate contends *Buzzard v. Farmers Insurance Co.*[8] provides the answer to the certified question by limiting a UM carrier's obligation to the amount of the claim which exceeds the tortfeasor's liability coverage limits. Its contention is that this limitation is a rule of general applicability, and neither the running of the statute of limitations nor the fact that Allstate is both the liability and UM carrier under the same policy of insurance may alter this rule.[9]

¶ 8 Linda argues [10] that: (1) a UM carrier has a statutory duty to pay first-dollar damages to an insured where, at the time the UM claim is resolved, no liability insurance is available to the claimant even if liability insurance was available at an earlier time, provided the claimant does nothing affirmatively to cause the liability insurance to become unavailable; [11] (2) *Buzzard* is not dispositive because in that case the court's discussion of the scope of a UM carrier's obligation, if understood as a blanket limitation on that

7. 1991 OK 127, 824 P.2d 1105.

8. 1991 OK 127, 824 P.2d 1105.

9. The universality of Allstate's position is demonstrated by the issues which, in its brief to this court, Allstate explicitly removes from consideration as factors in this case: (1) Allstate concedes that a *UM carrier has no subrogation rights* against its own policyholder for UM benefits paid under that policyholder's contract of insurance. Thus, Allstate's contention that its contractual obligation in this case is limited to the amount of damages that exceeds the tortfeasor's liability limits is *not* based on any purported *loss of subrogation rights* against Herbert; (2) Allstate concedes that Linda's failure to sue Herbert does not destroy, reduce, or alter what she is entitled to collect under the UM policy. Allstate contends that Linda is entitled to precisely the same amount *after* the lapse of the limitations period which she could claim *before* its expiration. Allstate's disagreement with Linda concerns *only* the amount for which Allstate is *ever* liable under the UM coverage; and (3) Allstate agrees that the UM *total policy limits* under Linda's policy may not be reduced by the liability limits of the tortfeasor. Allstate's contention is that it owes Linda only $40,000 of her $50,000 damage claim, but the full $100,000/$300,000 UM limits of the policy remain available to pay that claim. Thus if her claim had been valued at $110,000, Allstate would have paid her $100,000, the full policy limit.

10. In addition to the arguments set forth in the text, Linda argues that even if the court were to establish a general rule that under Oklahoma's uninsured motorist statute, the UM carrier's obligation is limited to the amount in excess of the tortfeasor's liability insurance limits, that general rule should not apply under the particular circumstances of this case where Allstate is both the liability and UM carrier under the same policy of insurance. Linda reasons that if Allstate had had to pay the policy's liability limits, it would have paid her in total the same amount that she is now seeking from the UM coverage. In denying payment, Linda argues, *Allstate is relying on a mere accounting technicality.* Linda further reasons that where the UM carrier could never have recovered in subrogation from its own insured (Herbert), the running of the statute of limitations did nothing to prejudice Allstate. She also argues that Allstate failed to perform the prompt investigation of her claim required by our decision in *Buzzard.* She contends that had Allstate performed the required investigation of her UM claim, it would have gathered, as Herbert's liability carrier as well as her UM carrier under the very same policy of insurance, all the information it needed to process the liability claim at the same time. Therefore, all the damages should be paid by Allstate without regard to whether Linda can now sue Herbert, and Allstate is simply hiding behind its own failure properly to investigate and settle the liability claim. In light of our decision today, it is unnecessary to consider these arguments.

11. Linda contends that the UM carrier's obligation is not fixed as of the date of the accident, but can change depending on subsequent events. Linda argues that an *underinsured* tortfeasor becomes an *uninsured* tortfeasor upon the expiration of the statute of limitations on the injured party's tort claim against the negligent party, causing the tortfeasor's liability insurance to become unavailable, and the UM carrier then becomes responsible for all of its insured's damages from the first dollar up to the UM policy limits.

obligation, was gratuitous (*obiter dictum*) and should not now be elevated as *ratio decidendi* for resolution of the issue in this case,[12] and (3) if *Buzzard* were to be found dispositive here, it should be construed as expressly limiting a UM carrier's liability to "the amount of the claim which exceeds that *available* from the liability carrier" (emphasis added),[13] and the court should now make clear that *availability* is the crucial factor, and is to be determined at the time the UM claim is resolved, not at the time of the accident.[14]

¶ 9 In *Buzzard*, the plaintiffs' son was killed when his automobile was struck by a City of Norman truck. The City of Norman carried liability insurance in the amount of $50,000 per claimant. The plaintiffs' damages exceeded the liability insurance limits, and the City was hence underinsured with respect to the plaintiffs' damages. Plaintiffs presented their UM claim to their insurer, Farmers Insurance Co. ("Farmers"), within a month of the accident. Farmers took the position that it did not have to pay anything on the UM claim *until* the liability insurance benefits had been "exhausted" by settlement or judgment. Plaintiffs then settled the claim with the City of Norman for $50,500 and signed a covenant not to sue. Farmers now refused to pay on the UM policy because the plaintiffs' covenant not to sue had de-stroyed their subrogation rights against the City. The court held that a UM carrier *cannot withhold payment on the UM policy until liability benefits have been exhausted.* The UM carrier must promptly investigate, place a value on the damage claim and pay UM benefits without regard to whether liability benefits have been paid. The court then went on to describe *what damages* a UM carrier is obligated to pay, stating that its obligation is to pay "that amount of injury or damage which *exceeds the liability limits* of the tortfeasor." [15]

¶ 10 Two decisions by the Oklahoma Court of Civil Appeals [16] have applied *Buzzard* in cases involving an issue similar to that which is presented in this case.[17] In the first, *Kavanaugh v. Maryland Insurance Co., Inc.*,[18] the injured party brought suit against the tortfeasor within the limitations period, but dismissed the suit without prejudice approximately three years later. After dismissing her suit against the tortfeasor, the insured sued her UM carrier, seeking recovery of her total damages. The insurer interposed *Buzzard*. The insured argued that *Buzzard* applied only where the tortfeasor's insurance remains available. Since the tortfeasor's liability insurance was no longer available to her, *Buzzard* was inapplicable. Relying on our decisions in *Bohannan v. Allstate Insurance Co.*[19] and *Uptegraft v.*

12. In its amicus curiae brief to this court, the OTLA enlarges upon the same analysis, making explicit that in its view, the court's discussion in *Buzzard* on the scope of a UM carrier's obligation was mere *dictum*.

13. *Buzzard*, 1991 OK 127 at ¶ 24, 824 P.2d at 1111.

14. Although Linda cites numerous cases demonstrating this court's tendency to protect the insured's right to collect from the UM carrier, none of the cited cases involves the issue presented here—whether an insured is entitled to first-dollar damages. *See, e.g., Torres v. Kansas City Fire & Marine Ins. Co.,* 1993 OK 32, 849 P.2d 407; *Barfield v. Barfield,* 1987 OK 72, 742 P.2d 1107; *Karlson v. Oklahoma City,* 1985 OK 45, 711 P.2d 72; *Uptegraft v. Home Ins. Co.,* 1983 OK 41, 662 P.2d 681. Linda also cites general language in *Karlson* which describes the UM carrier's obligation as that of having to pay for injuries caused by a tortfeasor who is unable to make full compensation, regardless of the cause of that inability. Linda reads more into this than is there. *Karlson* merely says that the UM carrier is required to pay, *to the extent of its legal obligation,* when a tortfeasor cannot. *Karlson* does not determine the scope of that obligation.

15. *Buzzard*, 1991 OK 127 at ¶ 29, 824 P.2d at 1112. Other language in *Buzzard*, as plaintiff points out, expressly states that the UM carrier's obligation is limited by the *available* liability insurance. *See, supra* text accompanying note 13.

16. Decisions of the Court of Civil Appeals released for publication by order of the Court of Civil Appeals have persuasive effect only. SUP. CT.R. 1.200(c)(2), 12 O.S.Supp 1997, Ch. 15, App. 1.

17. Both of these cases were decided after the time had expired to file briefs in this case.

18. 1997 OK CIV APP 41, 943 P.2d 629.

19. 1991 OK 64, 820 P.2d 787 (The purpose of Oklahoma's statutory UM scheme is to "assure each [UM insured] person the *full* contracted coverage" for which a premium has been paid.) (Emphasis added.) *Id.*, at ¶ 13, 820 P.2d at 792.

*Home Insurance Co.,*[20] the appellate court held that the insurer should be liable for the *entire* damages claimed by the insured if the tortfeasor's liability insurance is no longer available as long as the insured did nothing affirmatively to cause the liability insurance to become unavailable.[21]

¶ 11 The second pronouncement by the Court of Civil Appeals, decided this year, is *Smith v. American Fidelity Insurance Cos.*[22] In *Smith,* the insured made demand for payment of her entire damages (in the amount of $12,000) from her UM carrier, although the negligent party had $10,000 in collectible liability insurance. The insured argued that once the preconditions for the application of § 3636 are met, a UM carrier is liable to its insured for the entire amount of the insured's claim up to the UM policy limits, even if liability insurance remains available.[23] The insurer interposed *Buzzard.* The court

agreed with the insurer,[24] holding that under *Buzzard* the insurer cannot be compelled to pay the insured's entire damage claim where the tortfeasor's liability insurance remains available.[25]

¶ 12 Both *Kavanaugh* and *Smith* assumed *Buzzard* was dispositive on the outer limit of a UM carrier's liability to its insured. *We disagree.*[26] It is a time-honored principle of judicial decisionmaking that courts are not allowed to forecast what they might do about an issue that is not before them.[27] This principle was inadvertently departed from in *Buzzard.* Our discussion there of the scope of a UM carrier's obligation was pure *obiter dictum.* The issue in *Buzzard* was whether § 3636 permits a UM carrier to withhold payment of UM benefits until the limits of liability under any applicable liability policy are *exhausted by the payment* of a judgment or by settlement.[28] *The question that had to be decided in that case was when benefits*

---

**20.** 1983 OK 41, 662 P.2d 681 ("... failure of the insured to commence an action against the uninsured tortfeasor within the two-year time limit ... does not ipso facto discharge the insurer from liability upon its uninsured motorist coverage.") *Id.* at ¶ 16, 662 P.2d at 687.

**21.** *Kavanaugh v. Maryland Ins. Co., Inc.,* 1997 OK CIV APP 41, ¶ 11, 943 P.2d 629, 632.

**22.** 1998 OK CIV APP 70, 963 P.2d 16.

**23.** *Smith v. American Fidelity Ins. Cos.,* 1998 OK CIV APP 70, ¶ 4, 963 P.2d 16, 17, citing *Roberts v. Mid–Continent Cas. Co.,* 1989 OK CIV APP 92, 790 P.2d 1121 (holding that an uninsured motorist carrier is not entitled to a credit for the amount of liability coverage held by the tortfeasor.)

**24.** The insurer argued and the court agreed that under *Buzzard,* the limitation on the UM carrier's obligation was connected to the *available* liability insurance, not the existing liability limits regardless of their availability.

**25.** *Smith,* 1998 OK CIV APP 70, ¶ 6, 963 P.2d at 17.

**26.** In *Mustain v. United States Fidelity and Guaranty Co.,* 1996 OK 98, ¶ 2, 925 P.2d 533, 536, we held "as between the insurer and its insured UM insurance is primary coverage." In its *amicus* brief in this case, the OTLA argues that by its decision in *Mustain,* this court has already impliedly repudiated *Buzzard.* In *Mustain, we* held invalid an insurance contract provision which purported to control priority among multiple UM insurers. Our use of the term "primary coverage" to describe the relationship between multiple UM carriers did not clearly establish that UM coverage was primary in circumstances such as

those presented in the instant case. Today we make explicit that the *Mustain* usage of the term "primary coverage" does indeed apply beyond the facts of *Mustain* to include, as in this case, the relationship between the carrier's liability and UM coverage.

**27.** *Hughey v. Grand River Dam Authority,* 1995 OK 56, ¶ 10, n. 20, 897 P.2d 1138, 1143–1144, n. 20. "Every judgment must be read as applicable to the particular facts proved or assumed to be proved, since the generality of the expressions which may be found there are not intended to be expositions of the whole law but govern and are qualified by the particular facts of the case in which such expressions are to be found." Lord Halsbury's famous passage in Quin v. Leathem (1901) A.C. 495 at p. 506, quoted in Rupert cross, precedent in english law 37 (1961).

**28.** When a tortfeasor is insured, the possibility of recovery from the tortfeasor's liability insurance exists, and the terms of *underinsured* motorist coverage, where such coverage exists, often include a requirement that the tortfeasor's insurance be exhausted before any payment of underinsured motorist benefits will be made. Alan I. Widiss, uninsured and under insured motorist insurance, § 44.1, at 355–356 (2d ed.). When exhaustion is required either by contract or by statute, a settlement that does not exhaust a tortfeasor's liability limits can cause the insured to lose the right to seek indemnification from the underinsured motorist carrier. *Id.,* § 44.2, at 357. The issue of exhaustion is raised by insurers in order to *delay* any payment under a UM policy until the injured party *actually collects* from another insurer such as the tortfeasor's liability carrier or a second UM carrier and to limit the recovery to the amount in excess of the primary insurance.

*under UM coverage must be paid, not what benefits were payable.* The Buzzard family had settled with the City of Norman, for $50,500, $500 more than the City's liability policy limits. They were not attempting to collect from the UM carrier the same amount they had already collected from the liability carrier. In the *Buzzard* scenario, the court was quite correct that the insurance company's obligation to pay was limited to the amount of damages incurred which there exceeded the liability limit *since the liability limits had already been paid.* There was hence no need in *Buzzard* to fashion a general rule regarding the scope of a UM carrier's obligation. Any language in *Buzzard* formulating a global rule of universal applicability was gratuitous. It was pure dictum—a statement not dispositive of the issue the opinion purports to decide.

¶13 We turn next to the text of § 3636, the statute creating uninsured motorist coverage.[29] The purpose of an uninsured motorist provision in an insurance contract is *to protect the insured from the effects of personal injury from an accident with another motorist who either carries no insurance or has inadequate coverage.*[30] In enacting § 3636, the Legislature created *only one category of vehicle to which its provisions apply. In contrast to the statutory scheme of other states, § 3636 creates only uninsured motorist coverage, and includes within that term both motor vehicles on which their owners carry no insurance as well as those on which their owners' coverage is in an amount insufficient to satisfy a loss.* With one exception, the statute makes no distinction between completely and partially insured vehicles.[31] Moreover, no separate premium is charged for indemnity against insured losses occasioned by a completely

**29.** The pertinent subsections of § 3636 are:
"*§ 3636. Uninsured motorist coverage*
A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle *registered or principally garaged in this* state unless the policy included the coverage described in subsection B of this section.
B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47 of the Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured.... ·
C. ... For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other....
E. In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the

proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, ... Provided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage. Provided further, that if a tentative agreement to settle for liability limits has been reached with an insured tort-feasor, written notice shall be given by certified mail to the uninsured motorist coverage insurer by its insured. Such written notice shall include:
1. Written documentation of pecuniary losses incurred, including copies of all medical bills; and
2. Written authorization or a court order to obtain reports from all employers and medical providers. Within sixty (60) days of receipt of *this written notice, the uninsured motorist coverage* insurer may substitute its payment to the insured for the tentative settlement amount. The uninsured motorist coverage insurer shall then be entitled to the insured's right of recovery to the extent of such payment and any settlement under the uninsured motorist coverage. If the uninsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within sixty (60) days, *the uninsured motorist coverage insurer has* no right to the proceeds of any settlement or judgment, as provided herein, for any amount paid under the uninsured motorist coverage."

**30.** *Uptegraft v. Home Ins. Co.,* 1983 OK 41, ¶6, 662 P.2d 681, 683–684.

**31.** 36 O.S.1991 § 3636(E).

uninsured motorist and those by a partially uninsured motorist. The premium is one and indivisible. The insured who has paid a premium for uninsured motorist coverage and presses a claim for the actual amount of damages sustained within the policy limits seeks no more than recovery of that for which the premium was paid. If the liability limits of a motor vehicle are less than the amount of the injured insured's claim, that vehicle is classified as *uninsured.* Based on this definition, one can conclude that under our statutory scheme, the UM carrier's obligation to its insured is *identical* regardless of the underlying reason for the classification of the vehicle as uninsured. We hold § 3636 mandates that when the preconditions for the loss under uninsured motorist coverage exist, an uninsured motorist coverage carrier is obligated to pay the entire loss of its injured insured from the first dollar up to the policy limits.

¶ 14 The dissent argues that in enacting § 3636(D), the Legislature explicitly limited the use of UM coverage as a substitute for liability coverage to the situation in which the liability carrier becomes insolvent within one year after the date of the accident. The dissent is mistaken. Subsection (D) merely deals with an insolvent insurer as a special subclass of available UM insurance from indemnitors who become insolvent. It does not support the dichotomous treatment of claims generated by uninsured and underinsured tortfeasors.

¶ 15 The *pre-Buzzard* Court of Civil Appeals case of *Roberts v. Mid–Continent Casualty Co.,*[32] correctly applied § 3636.[33] First, the appellate court held that liability attaches to an uninsured motorist carrier without the insured first having to seek recovery against the tortfeasor.[34] Next, it held that an insured can collect solely from his (or her) UM carrier even after the statute of limitations runs on the insured's claim against the tortfeasor.[35] The court then turned to the question of the *amount* of damages for which the UM carrier is liable when the insured pursues the UM carrier without joining the tortfeasor. The insured sought recovery of his *entire* damages. The insurer argued that it was entitled to a credit for the amount of liability coverage held by the tortfeasor and that a failure to grant credit for the tortfeasor's liability insurance would be tantamount to making UM coverage primary. The court held that the intent of the legislature was to prohibit diminution of an injured party's recovery based upon payments made by a tortfeasor. Hence, there can be no credit given to a UM carrier for the amount of liability coverage held by a tortfeasor.

¶ 16 We agree. When § 3636 was amended in 1979, the Legislature prohibited the reduction of a § 3636 claim by a set-off of benefits from the tortfeasor's liability policy.[36] The purpose of Oklahoma's statutory scheme is to "assure each [UM insured] person the full contracted coverage" for which a premium has been paid.[37] This court has in

---

**32.** 1989 OK CIV APP 92, 790 P.2d 1121.

**33.** We disagree with *Roberts' (supra,* note 32) interpretation of the proviso in Section 3636(E) which states "that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limit as provided in the insured's own uninsured motorist coverage." *Roberts* holds this to mean "that payments made by a tort-feasor should not diminish the injured party's *recovery* under his own policy...." (emphasis added) *Id.* at ¶ 9, at 1124. This is incorrect. Section 3636 merely forbids the diminution of the UM policy's *total policy limits.* All UM coverage must remain available regardless of the existence of liability insurance. Section 3636 does not say that the amount of damages for which the UM carrier is responsible cannot be reduced by the amount of liability insurance. Thus, contrary to the *Roberts* holding, the proviso in § 3636 does not address whether first-dollar

damages are payable by the UM carrier or only the excess over the tortfeasor's liability limits. In the present case, the § 3636 proviso only addresses whether the $100,000 UM policy limit can be reduced by the $10,000 liability limit to $90,000. It cannot. It says nothing about whether the damages for which Allstate is responsible can be reduced by the available liability insurance from $50,000 to $40,000.

**34.** *Keel v. MFA Ins. Co.,* 1976 OK 86, 553 P.2d 153.

**35.** *Uptegraft v. Home Ins. Co.,* 1983 OK 41, ¶ 16, 662 P.2d at 687.

**36.** *Tidmore v. Fullman,* 1982 OK 73, ¶¶ 7 and 8, 646 P.2d 1278, 1284 (Opala, J., dissenting).

**37.** *Bohannan v. Allstate Ins. Co.,* 1991 OK 64, ¶ 13, 820 P.2d 787, 792.

several instances refused to permit a set-off for payments received by an insured person from collateral sources.[38] Upon payment of the loss to an insured, a UM carrier is free under § 3636(E) to proceed in its own right against the tortfeasor. The insured is penalized only when he (or she) takes some active step that would have the effect of destroying the insurer's § 3636 subrogation rights.[39] Even passive destruction of the insurer's subrogation rights, such as by permitting the statute of limitations to expire without filing suit against the tortfeasor, does not forfeit the uninsured motorist coverage.[40]

¶ 17 Allstate argues that the broader purpose of UM coverage is simply "to place plaintiff in the position she would be in if the tort-feasor had proper liability insurance," not to create a duplicate pool of insurance. In a situation where a vehicle is classified as uninsured solely because its liability coverage is inadequate to satisfy a damage claim, Allstate argues, UM coverage merely *"adds to"* existing liability coverage, but does not replace it. Allstate contends that the statutory language of § 3636 reveals no legislative intent to make UM coverage the sole source of recovery for all of a plaintiff's damages.

 ¶ 18 We agree that UM coverage was not intended to be the sole source of recovery for all of a plaintiff's damages and our holding today does not make it so. Allstate fails to take into account that if liability coverage is indeed "duplicated" by a "first-dollar damages" construction of § 3636, such duplication is only a temporary expedient to facilitate prompt payment to the insured. This clearly is contemplated by § 3636. Our holding—that the UM carrier is directly and primarily liable to its insured for the entire loss to be indemnified, except where the insured affirmatively destroys the insurer's subrogation right, does not make the UM carrier the final indemnitor for the injured party's loss. *The UM carrier is statutorily subrogated* to the rights of its insured

against the tortfeasor and the tortfeasor's liability carrier, if any there be, and must seek recovery of paid indemnity through an exercise of its right to subrogation. The particular facts of this case (in which both the liability and the uninsured motorist coverage are provided by the same carrier and the statute of limitations has run on the insured's tort claim against the negligent party) provide no reason to exclude Allstate from the application of the general rule we pronounce today.

¶ 19 **CERTIFIED QUESTION ANSWERED**

¶ 20 KAUGER, C.J., OPALA, ALMA WILSON, WATT, JJ., and CHAPEL, S.J. (sitting by designation in lieu of SIMMS, J., who certified his disqualification), concur.

¶ 21 SUMMERS, V.C.J., and HODGES, LAVENDER, and HARGRAVE, JJ., dissent.

LAVENDER, J., with whom SUMMERS, V.C.J., and HODGES and HARGRAVE, JJ. join, dissenting.

¶ 1 The United States Court of Appeals for the Tenth Circuit certified a question of law to this Court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991, §§ 1601–1611, as amended, asking in effect the following:

When an insured's damages in an automobile accident exceed a tortfeasor's automobile insurance liability limits and the insured seeks payment for damages directly from its underinsured motorist (UIM) carrier, does 36 O.S.1991, § 3636 (now Supp. 1994) mandate the UIM carrier be liable for the entire amount of the insured's claim when the tortfeasor's liability coverage and the injured person's UIM coverage are provided by the same carrier but the statute of limitation period has expired on the liability claim?

**38.** *Aetna v. State Bd. for Property and Cas. Rates,* 1981 OK 153, 637 P.2d 1251 (medical payments insurance cannot be set-off against UM coverage); *Chambers v. Walker,* 1982 OK 128, 653 P.2d 931 (workers' compensation benefits cannot be used to reduce the mandatory UM coverage limits); *Bill Hodges Truck Co. v. Humphrey,* 1984 OK CIV APP 55, 704 P.2d 94 (workers' compensation benefits may not be reduced by uninsured motorist insurance proceeds).

**39.** *Porter v. MFA Mut. Ins. Co.,* 1982 OK 23, 643 P.2d 302.

**40.** *Uptegraft v. Home Ins. Co.,* 1983 OK 41, 662 P.2d 681.

The majority answers the question in the affirmative. Because I would answer it in the negative, I respectfully dissent. Contrary to the majority opinion, under the circumstances presented by the certified question, § 3636 only mandates the UIM carrier be liable—up to the policy limits of the UIM coverage—for those damages sustained by its insured which exceed the tortfeasor's liability limits.

## PART I. FACTS AND PROCEDURAL HISTORY.

¶ 2 In April 1992 plaintiff/appellant, Linda Burch was injured in an auto accident while a passenger in her own vehicle. The accident occurred when the driver of Linda's car, her husband, Herbert, rear-ended another car. Defendant/appellee, Allstate Insurance Company provided automobile insurance coverage on Linda's vehicle and both Linda and Herbert were insureds under the policy. The liability limit in the policy, which would be available to pay damages to third parties for bodily injury or death caused by Herbert's negligence, was $10,000 per person/$20,000 per accident—the minimum required by 47 O.S.1991, § 7–204. The uninsured/underinsured (UM/UIM) limit was $100,000 per person/$300,000 per accident[1]. Linda's damages exceeded the $10,000 liability limit—thus, Herbert, as tortfeasor, was underinsured with respect to her claims. Although it appears Linda timely notified Allstate of her claims, Allstate asserted she provided insufficient documentation to permit evaluation and settlement of her claims before expiration of the statute of limitation on her liability claim.

¶ 3 In April 1994, on the day the statute of limitation expired on her claim against Herbert, Linda filed suit against Allstate for bad faith and damages under her UIM coverage. A settlement of her claim against Allstate as UIM carrier was ultimately reached for all damages exceeding $10,000. However-er, the parties reserved to the federal district court the issue of Allstate's liability for the first $10,000 of Linda's claim.

¶ 4 Allstate's position before the federal courts (as it is now) was that when the tortfeasor has liability coverage, but in an insufficient amount to cover all the injured person's damages, an underinsurance situation exists and § 3636 only mandates the injured person's UM/UIM coverage apply to pay those damages exceeding the tortfeasor's liability limit. It further asserts, the fact the tortfeasor's liability coverage is no longer available, for the reason the statute of limitation has expired on a liability claim against the tortfeasor, does not change the underinsurer's obligation, i.e increase it, to compel the UIM carrier to assume the additional contractual burden of paying for those damages that could have been recovered from the tortfeasor's liability insurance. Allstate places primary reliance on *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, 824 P.2d 1105 to support its position.

¶ 5 In opposition to Allstate's analysis, Linda asserts once the statute of limitation expired on her claim against Herbert, she was entitled to first dollar UM coverage because at that point Herbert is effectively **uninsured**, rather than **underinsured**. She attempts to distinguish *Buzzard*, chiefly on the basis it did not concern the unavailability of liability coverage because of the expiration of the statute of limitation. She also appears to argue, because Allstate provided both the liability coverage for Herbert's negligence and the UM/UIM coverage for Linda and, thus, Allstate could in no event have subrogation rights against Herbert—i.e its own insured—the liability and UM/UIM coverages should be treated as one insurance pool available to pay Linda's damages, notwithstanding statutory or contractual difference(s) between the two coverages.

---

1. The difference in the amount of liability and uninsured/underinsured (UM/UIM) coverage is explained by the Tenth Circuit's Certification of Question of State Law as follows: the liability coverage was stepped down to $10,000/$20,000 from $100,000/$300,000 when the injured party (Linda) was a named insured under the policy, but the UM/UIM coverage was unaffected by stepdown provisions. This Court is not asked to decide whether the UM/UIM coverage was automatically stepped-down to $10,000/$20,000 by the rationale employed in *Gray v. Midland Risk Ins. Co.*, 1996 OK 111, 925 P.2d 560 because 36 O.S.1991, § 3636(B) (now Supp.1994) provides that UM coverage shall not exceed the amount of liability coverage contained in an automobile insurance policy. Like the majority, I express no opinion on that issue.

¶ 6 The federal district court judge considered *Buzzard, supra* dispositive and ruled in Allstate's favor. In essence, following the analysis of this Court in *Buzzard,* she ruled § 3636 makes clear in an underinsurance situation the underinsurer is liable only for damages exceeding the tortfeasor's liability limits. She further ruled, the fact the statute of limitation has expired on a claim against the tortfeasor—thereby rendering liability coverage unavailable—does not change or increase the underinsurer's obligation. Linda appealed to the Tenth Circuit and the above certified question was presented to this Court.

¶ 7 In addition to the briefs of the parties, this Court allowed the Oklahoma Trial Lawyers Association (OTLA) to submit an *amicus curiae* brief. OTLA's position, although supporting Linda's in general, differs somewhat in analysis. The OTLA's position is: language in *Buzzard* which supports Allstate's argument that UIM coverage is available only to pay damages exceeding the tortfeasor's liability limits was unfortunate *dictum* misconstruing § 3636, which should be disavowed by this Court. In effect, OTLA asserts, even when a tortfeasor has applicable available liability insurance with limits sufficient to cover some, but not all, of the damages incurred by someone injured by the tortfeasor, the Legislature intended the injured person's UIM coverage to act as a duplicate pool of insurance to pay the same damages covered by the liability insurance. Thus, under OTLA's view, it is irrelevant whether or not the statute of limitation expired on any liability claim or that the liability and UIM carrier are the same. The majority opinion, in essence, agrees with OTLA's position and rejects the analysis found in *Buzzard* as being incorrect *obiter dictum.* In that I believe *Buzzard* accurately interprets § 3636 and provides the cornerstone for a correct answer to the question posed by the Tenth Circuit I dissent.

## PART II. ANALYSIS.

### A. *BUZZARD* CORRECTLY INTERPRETS § 3636.

¶ 8 I initially note, as the majority opinion has, neither the Tenth Circuit or the parties have submitted the Burch/Allstate automobile insurance policy. Thus, in answering the certified question I would assume the involved policy, under its UM/UIM provisions, provides uninsured/underinsured coverage in no greater circumstances than mandated by § 3636. In other words, if § 3636 does not mandate that UIM coverage in an automobile insurance policy pay the first $10,000 of Linda's damages in the circumstances presented, I assume nothing in the policy provides more extensive coverage.

¶ 9 Contrary to the OTLA's argument(s) and the majority opinion's apparent agreement therewith, *Buzzard's* analysis of underinsurance coverage is not *dictum* misconstruing § 3636. As applicable here, *Buzzard* concerned whether a UIM carrier could refuse to pay to its insureds UIM coverage limits of $10,000 on the basis they had not first exhausted the tortfeasor's liability limits which were $50,000 per claimant/$300,000 per accident, even when the insureds' damages—by virtue of their son's death in an auto accident—greatly exceeded the liability limits. In rejecting the carrier's assertion a jury finding of tortious bad faith on its part was reversible because the underinsurance coverage could be withheld until the liability limits were exhausted, it was necessary in *Buzzard* to explain the underinsurer's obligations to its insured and to delineate what damages are covered in an underinsurance situation, i.e. when the tortfeasor has liability coverage but damages exceed the tortfeasor's liability limits. This Court's opinion in *Buzzard* consequently and rightly explained the scope of a UM/UIM carrier's obligations in an underinsurance situation covered by § 3636, including an explanation of what damages a UIM carrier would be required to pay to its insured. The scope of the underinsurer's obligations and what damages are mandated by § 3636 to be covered in an underinsurance situation were central features of the decision in *Buzzard* and the majority errs in characterizing the analysis on these issues as *obiter dictum.* In addition to improperly characterizing *Buzzard's* determinations as to § 3636 and the underinsurance situation as *obiter dictum,* the OTLA and the majority also misinterpret § 3636.

¶ 10 *Buzzard* began by recognizing § 3636 required uninsured motorist coverage

be offered in every policy insuring a vehicle unless waived by the insured, 824 P.2d at 1110. It also recognized, under the terms of § 3636, the coverage applies both where the tortfeasor has no automobile liability insurance—the uninsured situation—and where the tortfeasor has liability coverage but in an amount insufficient to satisfy the claim of the injured party—the underinsured situation. *Id.* Concerning the latter, *Buzzard* stated:

Our [§] 3636(C) defines an underinsured vehicle as one which is insured, but "the liability limits of which are less than the amount of the claim" of the injured person.... Our statute makes it clear that the UM insurer is responsible only for the amount of the claim which exceeds that available from the liability carrier.

*Id.* at 1111.

¶ 11 The *Buzzard* opinion continued:

If the claim exceeds the amount available under the liability policy, the underinsurer must take prompt action to determine what payment is due and may not delay the payment of benefits until exhaustion of liability limits. The underinsurer may not safely await settlement between the liability insurer and the insured. Instead, the insurer must go about the business of investigating and evaluating the claim. An insurer is readily equipped to make such a determination, and to assign a dollar value to the claim. Once this is accomplished, if the insurer determines that the claim does not exceed liability limits, and such valuation is supported by reasonable evidence, the underinsurer may delay payment. However, if the underinsurer does not conduct an investigation, or after investigation, determines that the likely worth of the claim exceeds the liability limits, prompt payment must be offered.

*Id.* at 1112.

¶ 12 *Buzzard* went on to unequivocally set forth **what damages** are covered by UM/ UIM insurance when the tortfeasor has liability insurance, but damages exceed the tortfeasor's liability limits. This Court stated:

**The underinsurer is directly and primarily responsible to the insured for that amount of the claim which exceeds the liability limits of the tortfeasor's insurance.**

\* \* \* \* \* \*

**Our ruling furthers the purpose of underinsurance by providing quick payment for an insured's losses while also protecting the statutory rights of the insurer to be responsible only for that amount above the limits of liability. Regardless of whether the insured ever recovers from the tortfeasor, the insured may claim the benefits of underinsurance.** (emphasis added)

*Id.*

¶ 13 As seen, *Buzzard* succinctly held that in an underinsurance situation the UIM carrier is responsible **only** for those damages which exceed the limit of the tortfeasor's liability insurance coverage. In my view, this Court should continue to adhere to *Buzzard* because it correctly interprets the legislative intent behind § 3636.

¶ 14 In the more than seven years since *Buzzard* was handed down in 1991, the Legislature has had ample opportunity to amend § 3636 to change the interpretation *Buzzard* gave it. The Legislature has not done so, and such legislative silence may be considered as an understanding of legislative intent. *See e.g. Owings v. Pool Well Service,* 1992 OK 159, 843 P.2d 380, 383 f.n. 10. Also, failure to amend a statute after judicial construction of it indicates legislative acquiescence in that construction. *R.R. Tway, Inc. v. Oklahoma Tax Commission,* 1995 OK 129, 910 P.2d 972, 976. In that the Legislature has not amended § 3636 in regard to the obligations of the underinsurer and what damages are mandated by § 3636 to be covered in an underinsurance situation, post-*Buzzard* Legislatures have, thus, appeared to conclude our construction on these matters in *Buzzard* was accurate.[2]

---

2. Section 3636 has been amended only once since *Buzzard* was decided in 1991. The amendment was to subsection (G)(2) and concerned solely the issue of whether a new form allowing an insured to either reject or accept uninsured motorist coverage is required for the addition, substitution or deletion of a vehicle from a commercial automobile policy covering a fleet of five or more vehicles—an issue not relevant to that present here. 1994 Okla.Sess.Laws, Ch. 294, § 5.

¶ 15 Further, Allstate is correct the Legislature did not intend the UM/UIM coverage of § 3636 to act as a **duplicate** pool of coverage with a tortfeasor's liability insurance when the tortfeasor has such coverage, but not enough to cover all the damages of the injured person. Instead, the Legislature intended UM/UIM insurance in the underinsurance situation to act as additional insurance, up to the policy limit of UM/UIM coverage, available to pay those damages of the injured party which exceed the limit of the tortfeasor's liability coverage, just as *Buzzard* held.

¶ 16 In *Mid–Continent Cas. Co. v. Theus,* 1979 OK 23, 592 P.2d 519 this Court interpreted the 1976 version of § 3636(C), a predecessor provision to the one now before us. Interpreting this earlier version, the *Theus* Court held no uninsured motorist insurance benefits could be recovered where the tortfeasor's liability limits (which complied with the statutorily mandated liability limits) were the same as the injured party's UM limits. 592 P.2d at 520. Thus, UM coverage was generally not available at all when the tortfeasor had liability insurance, except when the injured party's uninsured motorist coverage limit was greater than the tortfeasor's liability coverage limit. *Id.*

¶ 17 Under the 1976 version of § 3636 then, the recovery of § 3636 insurance benefits where the tortfeasor had liability coverage was dependent on a comparison of the UM's and tortfeasor's liability limits, rather than a comparison of the amount of damages and the tortfeasor's liability limits. Therefore, under the 1976 statute, even if damages exceeded the tortfeasor's liability limits, no benefits would be due to an injured person under their own UM coverage if the limits of that coverage were in the same amount as the liability limits. Further, under the 1976 law, even if damages exceeded the amount recoverable from the tortfeasor's liability insurance and § 3636 benefits were allowed because the UM coverage limit was in a greater amount than the tortfeasor's liability policy limit, the UM policy limit was reduced

by the amount recovered from the tortfeasor's liability insurance. *Heavner v. Farmers Ins. Co.,* 1983 OK 51, 663 P.2d 730.

¶ 18 Shortly after *Theus,* the Legislature in 1979 amended § 3636(C) and (E). OKLA. STAT.ANN. tit. 36, § 3636 (1990), *Historical and Statutory Notes.* Subsection (C), as it pertains to underinsurance coverage, was amended to its present form to provide, an uninsured motor vehicle would also include "an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, **regardless of the amount of the coverage of either of the parties in relation to each other."** (emphasis added). As pertinent here, subsection (E) was also amended to add the following sentence, "[p]rovided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against **the total liability limits as provided in the insured's own uninsured motorist coverage."** (emphasis added)

¶ 19 In my view, these amendments, at least in part, were a response to *Theus* to prevent the **policy limits** of UM coverage from being neutralized or reduced by the amount of the tortfeasor's liability coverage or payments, in situations where the injured person's damages exceeded the liability limits of the tortfeasor. The amendments do not reflect a legislative design to have UIM coverage take the place of or duplicate the tortfeasor's applicable liability coverage, as the majority opinion seems to now hold.[3]

¶ 20 After the 1979 amendments, when damages exceed the liability coverage limits of the tortfeasor, the liability and UM coverage limits need not be compared, and the UM coverage be deemed unavailable if in the same or lesser limits than the tortfeasor's liability coverage. Further, after the 1979 amendments, payments of the tortfeasor do not act as a reduction or credit against the **total liability limits** of the insured's own uninsured motorist coverage—i.e. payments by the tortfeasor will not be used to decrease

---

**3.** The majority, thus, errs when it partially relies on the dissent in *Tidmore v. Fullman,* 1982 OK 73, 646 P.2d 1278, where Justice Opala appears to unnecessarily express his views on the meaning of the 1979 amendments to § 3636—views which I believe incorrectly interpreted the import of those amendments. The matter before us in *Tidmore* concerned only the 1976 version of the statute.

the **total** amount of UM/UIM coverage available to pay for damages suffered by an UM/UIM insured. The *Buzzard* holding does no violence to this correct understanding of the 1979 amendments of the Legislature, but completely conforms to the legislative intent of the amendments.

¶ 21 Under *Buzzard,* the policy limits of UIM coverage **are not** reduced, canceled or decreased on the basis of the tortfeasor's liability limits or by payments made to the injured person by the tortfeasor. Nor is UIM coverage dependent on a comparison of the tortfeasor's liability limits with those of the UM/UIM coverage. Under *Buzzard,* **the entire UM/UIM policy limits are available to pay damages of the injured party in an underinsurance situation, to the extent those damages exceed the tortfeasor's liability limits.**[4] Contrary to the OTLA's position and that of the majority, I can discern no legislative mandate in § 3636 allowing the UM/UIM insured the right to recover all of their damages from the underinsurer **when only a portion of the damages are uninsured, i.e. the underinsurance situation. In the underinsurance situation, the UM/UIM insurer's duty is to pay those damages suffered by its insured, that are not insured by the tortfeasor.** Accordingly, the majority simply misconstrues the meaning of the current version of § 3636 as providing a duplicate pool of insurance in the underinsurance situation.

## B. NOTHING ABOUT THE SITUATION HERE ALTERS *BUZZARD'S* APPLICABILITY.

¶ 22 Linda attempts to distinguish *Buzzard* partly on the basis that because the statute of limitation has expired—making the liability insurance of the tortfeasor, Herbert, no longer available—she is entitled to have the damages that would have been paid by the liability coverage, paid by the UM/UIM coverage. As Linda puts it at pg. 3 of her January 13, 1997 reply brief, etc., what "was always *partially* uninsured from the outset ... became *completely* uninsured two years later." (emphasis in original) Along with this argument she contends the expiration of the tort limitation period should not be deemed

to **discharge** Allstate. Much reliance is placed on *Uptegraft v. Home Ins. Co.,* 1983 OK 41, 662 P.2d 681. The reliance is misplaced.

¶ 23 In *Uptegraft* the United States District Court for the Western District of Oklahoma certified the following question to this Court:

> Does an injured person, by failing to commence an action against an uninsured motorist tortfeasor within the time established by 12 Okla.Stat.1981, § 95 Third, thereby discharge the injured person's insurer from liability upon its uninsured motorist insurance policy?

662 P.2d at 683. *Uptegraft* answered the question in the negative, holding an action to recover a loss under UM coverage was governed by the five year limitation period applicable to written contracts and that a provision in the policy which limited the time for bringing suit on the policy to less than the five year statutory period was void. *Uptegraft* also held the phrase "legally entitled to recover damages" from the wrongdoer contained in subsection (B) of § 3636, does not require an insured to establish all elements of a viable claim in tort in order to recover in a contract action against the UM carrier, but only fault on the part of the uninsured motorist and the extent of damages. *Id.* at 685. The Court also held, although the expiration of the two year tort limitation period on a claim against the tortfeasor may have destroyed the UM carrier's subrogation rights against the tortfeasor, this fact alone did not **discharge** the UM carrier from liability to its insured under the UM policy.

¶ 24 None of the holdings in *Uptegraft* are dispositive here. First, as plainly set forth in *Uptegraft,* it was the 1976 version of § 3636 that was before this Court there. 662 P.2d at 684 f.n. 2. Second, I do not read anything in *Uptegraft* that could be taken as deciding **what damages** are payable to an injured party under their UM/UIM coverage after the 1979 amendments to § 3636 in an underinsurance situation. Third, the question in *Uptegraft* was, did the expiration of the two year tort statute of limitation on a

4. Thus, as applicable here, the entire $100,000 of UM/UIM coverage was available to pay Linda's damages to the extent they exceeded the $10,000 liability limits of the tortfeasor.

claim against the tortfeasor relieve the two UM carriers involved there from **all liability** to the injured party for benefits under the respective policies?

¶ 25 Allstate **never** argues here the expiration of the tort limitation period against Herbert **discharged or somehow diminished** its statutory or contractual obligation to pay underinsurance benefits to Linda or that the two year tort limitation period should apply to her contractual claim against it, rather than the longer limitation period for written contracts. It is Linda, at least in part, that essentially argues the expiration of the tort statute of limitation **increases** Allstate's obligations to her under the UM/UIM coverage to pay the first $10,000 of her damages because liability coverage that was available during the two year period following the accident is no longer available. I find nothing in § 3636 that requires such an increase in the underinsurer's obligations to its insured.

¶ 26 Also, I detect nothing in § 3636 which inextricably ties **what damages** are due under UM/UIM coverage in an underinsurance situation to the status of the carrier's subrogation rights against the tortfeasor. In fact, subrogation is not even an issue in this case as Allstate acknowledges it could never have any subrogation rights against Herbert, the tortfeasor, because he is Allstate's own insured for purposes of the liability coverage in the policy.

¶ 27 Linda further attempts to gain support for her position the UM/UIM carrier is responsible for the **entire** amount of her damages, even though the tortfeasor had $10,000 of liability coverage which would have been available prior to the expiration of the two year tort statute of limitation, by citation to cases such as *Torres v. Kansas City Fire & Marine Ins. Co.*, 1993 OK 32, 849 P.2d 407 and *Karlson v. City of Oklahoma City*, 1985 OK 45, 711 P.2d 72. Each case was primarily concerned with deciding one of the same issues decided in *Uptegraft*, to wit: whether the phrase "legally entitled to recover damages" from the wrongdoer contained in subsection (B) of § 3636, required an insured to establish all elements of a viable claim in tort before the insured would be allowed to recover in a contract action against the UM/UIM carrier. Both

answered negatively. In my view, reliance on such cases is also misplaced.

¶ 28 *Torres* concerned whether the personal representative of a decedent's estate was entitled to recover under an UM/UIM endorsement contained in a comprehensive business insurance policy of the decedent's employer even though the tortfeasor—a coemployee of the decedent—was immune from liability by virtue of the exclusivity provisions of the Oklahoma Workers' Compensation Act, 85 O.S.1991, § 1 et seq., as amended. Following *Uptegraft, Torres* held the insured could so recover even though the coemployee tortfeasor had immunity from a tort suit by virtue of the workers' compensation laws. Again, this Court reiterated, the phrase "legally entitled to recover damages" merely required the insured to show fault on the part of the uninsured motorist wrongdoer and the extent of damages in the contractual action against the UM/UIM carrier. *Torres*, 849 P.2d at 410–412.

¶ 29 In *Torres* this Court was not concerned with deciding what damages were recoverable in an underinsurance situation. Although not expressly stated in the opinion, it appeared undisputed **no automobile liability insurance of the tortfeasor or his employer was applicable to the accident involved.** I assume neither party in *Torres* raised the applicability of liability insurance because any liability policy which would have existed in favor of the coemployee tortfeasor to protect him from claims of injured third parties, contained some type of exclusion to the effect the liability provision(s) of any such policy **did not apply** when the injured party was a coemployee. Thus, like *Uptegraft, Torres* was concerned with answering the question of whether an insured under an UM endorsement was entitled to recover **at all** under the policy of insurance involved.

¶ 30 Further, to the extent *Torres* does give an indication UM/UIM insurance **is available** to pay from the first dollar of an injured coemployee's damages, such a determination is plainly distinguishable from the situation presented here. As noted above, in *Torres,* even if there was some liability insurance that would have been applicable when the injured party **was not a coemployee,** the case was approached on the basis **no applicable liability insurance ever existed.** In

other words, the matter was approached as a **pure uninsured** situation when the injured party was a coemployee because of the exclusivity provisions of the workers' compensation laws. The case simply has no applicability, as here, where the tortfeasor **did have collectible liability insurance,** but such insurance becomes unavailable two years after the date of the accident because of the expiration of the tort statute of limitation on a claim against the tortfeasor.

¶ 31 *Karlson* also provides no help for Linda's position. As set forth in the third paragraph of this Court's opinion in *Karlson,* the plaintiffs there were seeking from the UM/UIM carrier recovery of only the **excess** damages above the maximum liability of the City of Oklahoma City under the Political Subdivisions Tort Claims Act. 711 P.2d at 73. **They were not seeking recovery of first dollar damages from the UM/UIM carrier.** *Karlson,* also relying on *Uptegraft,* concluded underinsurance benefits could be collected notwithstanding the Tort Claims Act's statutory cap on damages because the phrase "legally entitled to recover" simply means the insured must be able to establish fault on the part of the uninsured/underinsured motorist and prove the extent of damages. *Karlson* did not hold underinsurance benefits were due from the first dollar where the tortfeasor had applicable liability insurance.

¶ 32 Further, even if certain language in *Karlson* could be divorced from the fact the plaintiffs' there were only attempting recovery against the UM/UIM carrier damages in excess of the maximum liability of the City under the Tort Claims Act, and **might** be read favorably to Linda's position that she should be entitled to first dollar damages under the UM/UIM coverage involved here

because liability coverage once available is no longer so—in that the limitation period on a tort action against her husband, Herbert, has expired—such language is over broad and, at least, partially incorrect. The language from *Karlson,* is:

When the insured and [the UM/UIM carrier] entered into their contract, they contemplated a situation where [the carrier] might be required to pay for injuries caused by some tortfeasor where that tortfeasor was not able to make full compensation for those injuries. Whether the tortfeasor's inability to make full compensation results from lack of sufficient insurance, insolvency, or for other reason, is irrelevant.

711 P.2d at 75.

¶ 33 First off, the UM/UIM coverage of § 3636 is **not** a legislative guarantee of full compensation for injuries suffered in an automobile accident with an uninsured or underinsured motorist. *See Gray v. Midland Risk Ins. Co.,* 1996 OK 111, 925 P.2d 560 (general purpose of § 3636 is to require that certain minimum standards of protection or coverage are afforded).[5] Second, an injured person is **not** entitled in all circumstances to recover from a UM carrier damages which normally would be paid by the tortfeasor's liability carrier—but cannot be paid—because of the liability carrier's insolvency. In § 3636(D) the Legislature itself has only explicitly mandated UM coverage act as a substitute for the tortfeasor's liability coverage to those situations where the liability carrier becomes insolvent **within one year after the date of the accident.**[6] Third, the seeming open-ended guarantee of *Karlson* that an injured party is entitled to UM coverage if the inability of the tortfeasor to make full compensation results from any "other reason" is incon-

---

**5.** As *Gray, supra,* note 1, points out, an insured has an opportunity by virtue of § 3636(B) to purchase UM/UIM coverage in an amount not to exceed the limits of the liability coverage of the involved automobile liability insurance policy [925 P.2d at 561], and, thus, UM/UIM coverage limits may be obtained in a greater amount than the minimum prescribed by 47 O.S.1991, 7–204, the statute which sets out the **minimum** limits of liability that must be contained in an automobile liability policy. This opportunity for increased limits of UM/UIM coverage, however, does not express a legislative intent that full compensation is guaranteed in an uninsured or underinsured

situation, nor does it alter the *Buzzard* analysis that in the underinsurance situation, § 3636 only mandates that UM/UIM coverage be available, up to the policy limit, to pay those damages exceeding the tortfeasor's liability limits.

**6.** 36 O.S.Supp 1994, § 3636(D), in apparent conformity with freedom of contract principles, provides the one year time limit in regard to insolvency protection should not be construed to prevent any insurer from according greater insolvency protection under terms and conditions more favorable to its insured.

sistent with both the one year explicit time period concerning insolvency protection and with *Buzzard's* unequivocal holding that in the underinsurance situation, the UM/UIM carrier is responsible, up to the policy limit, only for those damages suffered above the policy limit of the tortfeasor's liability insurance, regardless of whether the insured ever recovers from the tortfeasor. 824 P.2d at 1112. Thus, *Karlson* cannot be taken to mean, as Linda would have us take it, that when the statute of limitation period has expired on a claim against the tortfeasor—thus making liability coverage unavailable—that § 3636 mandates the underinsurer's obligation is increased so as to compel the UIM carrier to assume the additional burden of paying for those damages that could have been recovered from the tortfeasor's liability insurance.

¶ 34 Linda's other argument(s) that she should be entitled to first dollar damages, apparently based on the fact Allstate provided both the liability coverage for Herbert and the UM/UIM coverage for her, are also not well grounded, in my view. In such regard, it is important to recognize the difference between liability coverage of the tortfeasor and UM/UIM coverage of the injured party. As this Court stated in *Uptegraft:*

> While both public liability and uninsured motorist coverage provide compensation for bodily injury sustained as a result of the negligent operation of a motor vehicle, they serve different purposes. Uninsured motorist insurance *is not liability insurance.* It does not undertake to protect the insured against liability he may incur to others but rather it compensates him for a loss caused by a specific class of tortfeasors. On the other hand public liability coverage affords the insured protection, not compensation. (emphasis in original) (citations omitted)

662 P.2d at 685 f.n. 6.

¶ 35 In other words, liability coverage is to protect the tortfeasor for his/her own negligence that causes injury to third parties, while UM/UIM coverage compensates an injured person when the negligent motorist tortfeasor either has no liability coverage (the uninsured situation) or has insufficient liability insurance to cover the damages caused to the injured party (the underin-

sured situation). I can discern no legislative intent in § 3636 to blur the clearly understood difference between the two types of insurance merely because the liability and UM/UIM coverages are provided by the same insurer. Therefore, Linda's argument(s) which would seemingly have us ignore the difference between liability coverage on the one hand and UM/UIM coverage on the other, in my opinion, should be deemed unavailing.

**CONCLUSION**

¶ 36 In summary, I believe *Buzzard* correctly held that § 3636, in an underinsurance situation, only mandates that UM/UIM coverage be available, up to the policy limit, to pay those damages exceeding the policy limit of the tortfeasor's liability insurance. In my opinion, the majority errs in rejecting the plain import of *Buzzard* and it misinterprets the legislative intent behind § 3636 in the underinsurance situation. Further, nothing in § 3636 mandates increasing an underinsurer's obligation beyond that recognized in *Buzzard* merely because the statute of limitation has expired on a claim against the tortfeasor—thus making the liability coverage unavailable—or because the tortfeasor's liability coverage and the injured party's UM/UIM coverage are provided by the same insurer. In that the majority opinion erroneously answers the certified question propounded to this Court I respectfully dissent.